W. J. WALLACE v. THE WESTERN NORTH CAROLINA RAIL- ROAD COMPANY.

*Negligence—Evidence.*

1. Where the facts are ascertained, what is contributory negligence is a question for the Court; where they are disputed, it is the duty of the Court to explain the law and direct the jury to apply it to the facts.

2. A person who takes passage on a freight train, knowing the risks and inconveniencies incidental thereto, is bound to exercise more care with respect to his own safety and comfort than is required of him upon ordinary passenger trains.

3. Where the plaintiff was a passenger on a freight train, riding in a "caboose," there being seats provided for him, was thrown down and received injuries by the sudden starting or jerking of the train; *Held*, to be some evidence of contributory negligence, which ought to have been submitted to the jury.

(*Smith* v. *R. R. Co.*, 64 N. C., 235, cited).

CIVIL ACTION, tried before *MacRae, Judge*, at Spring Term, 1887, of McDOWELL Superior Court.

In November, 1885, the plaintiff was a passenger on a freight train of the defendant company, going from the town of Old Fort to the town of Marion, and he alleges, substantially, that for want of due care and attention, the locomotive to which the train was attached was overloaded, causing it to "stall," and by the careless, unskillful and negligent management of the servants and agents of the defendant company, it was driven with such terrible force against the

cars of the defendant as to cause the car in which the plaintiff was, to be jerked and jarred with such force as to violently throw him down within said car, whereby he was greatly cut, bruised and wounded, and. had his leg badly fractured and broken, &c.; and for his said injuries he claims $8,000 damages.

The defendant company answers, denying the material allegations of the complaint, and for a further defence, says plaintiff by his own negligent conduct contributed to his injury; that he was a passenger on a second-class car, on a freight train, and knew it was not as safe and comfortable, or as easily managed and controlled as a passenger train, and consented to the ordinary risk incident thereto. such as sudden jerks and starts or stops, &c.; that he knew the inconveniences of the seats' and their condition, and assumed such risks as necessarily grow out of such appurtenances, and was bound to exercise more than ordinary care for his own safety, and that he failed to care for himself as he ought under the circumstances.

There was evidence on behalf of the plaintiff tending to show that the train was behind time and overloaded; that at an up-grade it stalled and stopped; that attached to the train was a caboose for passengers, with seats running along the sides—one bench on each side; that a passenger in the caboose named Clinard, with his arm in a sling, had a coat and bottle of liniment, which upon a sudden jerk of the car, had fallen to the floor, and the plaintiff had picked it up, and was standing; that the train had jerked a number of times, and by a sudden and severe jerk—"crash," one of the witnesses termed it—the plaintiff was thrown to the floor, and had a bone of the thigh broken.

It was also in evidence that the plaintiff knew that it was a freight train; had lived on the line of the road; had seen long freight trains, and "the engineers starting them;" that there was plenty of room to sit down, and the plaintiff was

near a seat, and that the other passengers were seated. One of them, W. H. Murphy, a witness for the plaintiff, testified that " the train had stalled and jerked several times; he kept his seat; was afraid of their running back to get a start, and knew they were pretty rough about starting."

There was also evidence as to the nature and extent of plaintiff's injury, and of want of proper care and attention on the part of the conductor.

There was evidence on behalf of the defendant tending to show that the conductor and engineer were careful and skillful; that the engine was in perfect order; that there were no defective cars, and that the hands were competent, prudent and reliable; the track was in good order, but wet, and that the " stall" resulted from a wet rail; that the engine was not overloaded, and that " the running back of a car, and slipping and jerking in running of freight trains is not unusual—it happens every day;" that there is a difference in the coupling of freight trains from that of passenger trains that causes the difference in the jerking; on the freight trains there is a " space or slack " of six or eight inches between each car; the advantage of this is, "that if it is all tight, you have the full weight of the train at the start, with the slack you get the engine in motion before you get the full weight of the train."

The evidence is set out in full, and sent up with the record, but in the view we take of the case, it is not necessary to state it fully here.

The following issues were submitted, without objection:

1. Was the plaintiff injured by the neglect of the defendant, as alleged in the complaint?

2. Did the plaintiff contribute to the injury by his own negligence?

3. What damage has plaintiff sustained?

The defendant asked the Court to charge the jury:

1. That a passenger on a freight train accepts it, and takes

it, and travels on it, acquiescing in the usual incidents and conduct of a freight train, if managed by prudent, competent men;

2  That in the movements of freight trains, the jerking is inevitable, and is not ascribable to negligence or want of skill or improper management on the part of the agents of the company;

3. That it is not to be expected a company will provide its freight trains with all the conveniences and safeguards against danger that are required in the operation of passenger trains;

4. It is the duty of a passenger in a train to take ordinary care of himself.  If danger is apparent, or expected, he is to see and know it;

5. It is usual and proper for a passenger to remain in his seat, and especially so on freight trains, when he has reason to believe there is danger in any other position than being seated;

6. That there is no evidence that the engine or locomotive was overloaded;

7. That there is no evidence of careless management of the locomotive or cars on the part of agents of defendant on this occasion;

8. That in review of, and in the light of the evidence in this case, the injury was an accident, and not the result of negligence.

The jury found the issues in favor of the plaintiff, and from the judgment thereon the defendant appealed.

The defendant assigned as errors:

1. The refusal of his Honor to charge as requested; and

2. That his Honor erred in instructing the jury that there was no evidence of contributory negligence on the part of the plaintiff, and that they must respond to the second issue, " No."

*Messrs. P. J. Sinclair* and *W. H. Malone,* for the plaintiff.
*Messrs. D. Schenck* and *C. M. Busbee,* for the defendant.

DAVIS, J., (after stating the case). The charge of his
Honor is set out in full, but as we think there was error in
instructing the jury that there was no evidence of contribu-
tory negligence, it is not necessary for us to consider how far
the prayer for instructions, though not given in the form re-
quested, was substantially met by the charge as given, or
whether the charge did not cover the instructions asked for
to the full extent to which the defendant was entitled; and
we may say that the defendant was not entitled to the 6th,
7th and 8th instructions at all.

In *Smith* v. *N. C. R. R. Co.,* 64 N. C., 235, it is said: " When
the facts are agreed upon, or otherwise appear, what is ordi-
nary care is a question for the Court. When the facts are
in dispute, the proper course for the Judge is, to explain
what would be ordinary care under certain hypotheses as to
facts, and have the jury to apply the law to the facts, as they
find them." The same rule applies to negligence and to con-
tributory negligence. If there is *any evidence,* from which
the jury may find facts constituting contributory negligence,
it should go to the jury.

Was there any negligence tending to show contributory
negligence in this case?

We think there was.

A "caboose" attached to a freight train, does not furnish
all the appliances and conveniences for the safety and com-
fort of passengers that are provided for passenger trains, and
while it is the duty of the company carrying passengers on
such a train to exercise every reasonable care, and take every
precaution against injury or danger to the life of such pas-
sengers, which the appliances for that mode of transporta-
tion will admit of, it is also the duty of the passenger who
travels on such a train with a full knowledge of the in-

creased risk incidental thereto, to be correspondingly careful in guarding against injury, by reason of the risk incidental to such mode of travel. An act may be negligent or not, according to the attendant circumstances. An act on a regular passenger train, with air brakes and other appliances to secure smooth and comfortable, as well as safer travel, may not be at all negligent in the passenger, while the same act in a "caboose" attached to a freight train might be careless and negligent. It is a fact of common knowledge that even on a passenger train, with every appliance for comfort and safety that can be devised, there is more or less of jar and jerk incident to the starting and stopping of trains, and it is in evidence in this case that such jars and jerks are much greater on freight trains, and necessarily so, by reason of their character. The passenger on such a train assumes the ordinary risk and discomfort incident thereto, and if the train is managed with such care and prudence, by skilful and competent employees, as to subject him only to the discomfort and risk thus incident, the company would not be liable for any *accident* resulting therefrom, by reason of the failure of the passenger to show usual and ordinary precaution. There is evidence tending to show that the plaintiff did not do this. It is in evidence that the jerks and jars incident to the freight train were known to him; that on this occasion the train was a long one, and the locomotive was moving it with difficulty, and there had been frequent jerks, more or less severe, and such as seem to have suggested to other passengers the propriety of retaining their seats, for one of the plaintiff's witnesses testified that "he kept his seat," knowing "that they were pretty rough about starting."

It was in evidence that there were seats for all the passengers, and the fact that others in the "caboose" kept their seats, and none of them were hurt, constitute some evidence tending to show that it was careless and negligent in the plaintiff, under the circumstances, to be standing. We think

there was error in withholding from the jury the second issue, and the defendant is entitled to a new trial.

Error.