## MARABLE v. RAILROAD.

(Filed November 7, 1906).

*Carriers—Passengers—Liability—Degree of Care—Negligence—Clergyman's Permit—Harmless Error—Passenger on Freight Train—Assumption of Risks—Instructions—Rules Regulating Appeals.*

1. A carrier of passengers is not an insurer, as is a carrier of goods. His liability is based on negligence, and not on a warranty of the passenger's freedom from all the accidents and vicissitudes of the journey.

2. The admission of evidence that the plaintiff in purchasing his ticket used an "Annual Clergyman's Reduced Permit," which contained the following contract: "In consideration of the reduced rate granted by this permit, the owner assumes all risk of damage and accident to person or property while using the same," was harmless.

3. The carrier is required to use that high degree of care for the safety of the passenger which a prudent person would use in view of the nature and risks of the business.

4. In taking passage on a freight train, a passenger assumes the usual risks incident to traveling on such trains, when managed by prudent and competent men in a careful manner.

5. Where a charge covers the entire case and submits it fairly and correctly to the jury under all the circumstances, parties have no just ground of complaint, or for asking anything more, especially if they have failed to request more definite instructions.

6. The attention of the profession is specially directed to the rules of this Court, and to the decision in *Davis v. Wall* at this term, as being very proper for their careful consideration when preparing cases on appeal.

ACTION by M. V. Marable against Southern Railway Company, heard by *Judge G. S. Ferguson* and a jury, at the July Term, 1906, of the Superior Court of IREDELL.

This is an action brought to recover damages for injuries alleged to have been caused by the negligence of the defendant. The plaintiff was a passenger on one of defendant's local freight trains in September, 1904. The train was composed of about 35 cars and a caboose, in which the plaintiff was sitting on a seat with his feet on a box having tools in it, a stove being near and in front of him. There were cushioned seats in the car. He took passage at Charlotte for Landis and presented to the ticket agent an "Annual Clergyman's Reduced Permit" which contained the following contract: "In consideration of the reduced rate granted by this permit, the owner assumes all risk of damage and accident to person or property while using the same." The plaintiff testified that his name was on the permit, but that he had refused to sign it, though he used it for the purpose of securing a reduced rate, and was allowed the reduced rate by the agent. The plaintiff objected to the introduction of the permit; the objection was overruled, and he excepted. The conductor took up his ticket after he got on the train. When between Concord and Glass the train came to a sudden and violent stop, throwing the plaintiff from his seat on the end of the bench against the stove and bruised and otherwise injured his right forearm. His nervous system was affected and his health failed. The engineer, not now in the service of the company, testified that there were 35 cars in the train, which were fully equipped with automatic air-brakes and all necessary appliances. Everything was in first-class condition. When the train was approaching Glass he got an order to stop there, and did stop

the train in the usual manner. The train was on an up-grade all the way to Glass from Concord, and there could have been no unusual jar or jolt of the train when it stopped. There was a jar, and always is, when such a train is stopped. It comes from the slack in the cars. There is more jolting in a freight than in a passenger train. The train was running from 6 to 8 miles an hour. There was evidence tending to show that the plaintiff occupied a dangerous position, and one likely to cause his fall from the seat if the train should make the usual stop, and that a person not used to riding on a freight train of 35 cars is very apt to get a good bump if he is not careful, and that almost any one will be jolted some. There was much other evidence substantially to the same effect as that already stated.

The Court, at the request of the plaintiff, charged the jury that a carrier cannot stipulate for exemption from liability for negligence, and the permit held by the plaintiff and used by him to get a reduced rate of fare would not exonerate the defendant, if the plaintiff was injured by its negligence, and that it is no bar to his recovery. That where one is injured in a public conveyance and the injury resulted from something over which the carrier had control, the law raises a presumption of negligence which extends to the occurrence, regardless of the party who is injured. If the jury found that the plaintiff was injured as described by him, the law raised a presumption of negligence, and he is entitled to recover, unless the defendant has shown by the greater weight of the evidence that the sudden and violent stoppage of the train was caused by something not within its control; and unless this has been shown by the defendant, they will answer the first issue (as to defendant's negligence) "Yes." That in such a case and under such facts and circumstances the doctrine of *res ipsa loquitur* applies and casts the burden on defendant to show that the injury was unavoidable; and if

it has failed so to do, they will answer the first issue "Yes." These were all the instructions requested by the plaintiff on the first issue, and all were given.

The Court, at defendant's request, charged the jury that the common law made the defendant an insurer of the plaintiff's safety, and that the permit had the effect of relieving the defendant of the said common-law liability, and that defendant would only be liable for negligence if there was. any. That negligence must be shown to have caused the injury, which must have proceeded from some fault of the defendant. That the plaintiff assumed the ordinary risks incident to the running of a freight train, such as the one in question was, if it was managed in a prudent and careful manner, and the jerking of the train which is alleged to have caused the injury was unavoidable and such as ordinarily occurs in the operation of a freight train; and if the train was so managed and the jolting or jarring which caused the injury was unavoidable and only incidental to the running of such trains, even when prudently and carefully managed, they should answer the first issue "No."

The Court in its general charge, which was elaborate, explained to the jury the contention of the parties and the bearing of the testimony upon the issues in the case, and then substantially instructed the jury that while the burden of the issue is upon the plaintiff, and he must show negligence, yet if there was such a sudden and violent stopping of the train that plaintiff was thrown from his seat, it would require explanation from the defendant, and the inquiry naturally arises, Why was the train so suddenly stopped? The answer should naturally come from the defendant, as the plaintiff was in the caboose and the defendant's servants were in charge of the train. The jury answered the first issue, as to defendant's negligence, "No." Judgment was entered for the defendant, and the plaintiff appealed.

*G. B. Nicholson, Furches & Coble* and *J. B. Connelly* for the plaintiff.

*L. C. Caldwell* for the defendant.

WALKER, J., after stating the case: We can find no fault with the instructions given by the Court to the jury, when they are considered together and construed in the light of the facts which the evidence tended to establish. The Judge gave the plaintiff the full benefit of the circumstances attending the injury as evidence of negligence and charged the jury that the defendant must show that the jolting of the train was unavoidable in order to acquit itself of negligence.

A carrier of passengers is not an insurer, as is a carrier of goods. He is therefore not absolutely liable for the safety of the passenger, as the carrier of goods is for the safety of the goods intrusted to his care. His liability is based on negligence, and not on a warranty of the passenger's freedom from all the accidents and vicissitudes of the journey.

The doctrine that the carrier of goods is an insurer was adopted for reasons peculiar to the undertaking, and because of the unlimited control of the carrier over the property. It was first announced, we believe, by *Lord Holt* in the famous case of *Coggs v. Bernard,* 2 Ld. Raymond, 909 (1 Smith's L. C., 369), in these words: "The law charges the person thus intrusted to carry goods as against all events but the act of God and the enemies of the King," and this *dictum* of his was formally accepted as a principle of the common law by solemn decision in *Forward v. Pittard.* 1 Term Rep., 29; *Christie v. Griggs,* 2 Camp., 79. In the latter case *Lord Mansfield* drew the distinction between the two classes of carriers when he tersely said: "There is a difference between a contract to carry goods and a contract to carry passengers. For the goods the carrier is answerable at all events. But he does not warrant the safety of passengers." The distinction was recognized in *Aston v. Heaven,* 2 Esp., 532; *Crofts v.*

142—36

*Waterhouse,* 3 Bing., 319; and *Harris v. Costar,* 1 Car. & P., 636, and finally settled in the leading case of *Readhead v. Railway,* L. R., 4 Q. B., 379; *Bridgers v. Railway,* L. R., 7 H. L., 231.

In this country the measure of liability of the two kinds of carriers has been practically settled according to the English rule. *Ingalls v. Bills,* 9 Metc., 1; *Stokes v. Saltonstall,* 9 Peters, 181; *Railroad v. Ball,* 53 N. J. Law, 283; *Palmer v. Canal Co.,* 120 N. Y., 170; *Gilbert v. Railway,* 160 Mass., 403; *Meier v. Railroad,* 64 Pa. St., 225. This Court has recognized the distinction and erected different standards of duty for the two classes, in *Hollingsworth v. Skelding* (at this term); *McNeill v. Railroad,* 135 N. C., 682 (*s. c.,* 132 N. C., 510), and *Everett v. Railroad,* 138 N. C., 68.

A carrier of goods can only relieve himself of his common-law liability as an insurer for loss or damage not resulting from his negligence by a contract reasonable in its terms and founded upon a valuable consideration: *Everett v. Railroad, supra;* but this principle does not apply to the carrier of passengers, because he is under no such liability. 1 Fetter on Carriers, sec. 2; 6 Cyc. of Law, 590-594. In this view of the law, the evidence as to the permit was harmless.

The exceptions of the defendant are so placed in the charge that we are at a loss to know the particular proposition of law as laid down by the Court, which was considered objectionable. If it was supposed that the defendant was bound to exercise the highest degree of care, and that the Court failed to raise the degree to the required maximum, it is sufficient to say that there was no request for such a special instruction, and the omission, if there was one, is not therefore available to the defendant. The many different forms of expression used in stating the rule of liability all recognize substantially the same test, the difference in statement being for the purpose of applying the rule to different states of facts. Thus it has been said that the carrier is

required to exercise that high degree of care for the safety of the passenger which a prudent person would use in view of the nature and risks of the business, or, in general, the highest degree of care, prudence and foresight to prevent injury to the passenger which the situation and circumstances demand in view of the character and mode of conveyance, and which a prudent man engaged in the business, as usually conducted, would employ, and which is reasonably practicable and consistent with the efficient conduct of the particular business and the free use of all proper means and appliances. The standard of duty should be according to the consequences that may ensue from carelessness.   6 Cyc., 591-593 ; *Railroad v. Horst,* 93 U. S., 291.

Whatever the rule may be, the plaintiff has no right to complain of its misapplication in this case, as the Court gave all of the instructions he asked for, and, besides, the presiding Judge finally brought the liability of the defendant to the true test, which is negligence or the failure to exercise proper care, under the circumstances; and he told the jury that the defendant would be liable unless the injury was unavoidable.

In taking passage on a freight train, the plaintiff assumed the usual risks incident to traveling on such trains, when managed by prudent and competent men in a careful manner.   While life and limb are as valuable, and the right to safety may, perhaps, be the same in the caboose as in the palace-car, yet it must be remembered that in the operation of freight trains the primary object is the transportation of freight, and the means and appliances used are, and are known by the passenger to be, adapted to that special business; and therefore one who travels on such trains must expect that jolts and jars will occur, and he necessarily takes the risk of those which are not caused by the negligence of the carrier's servants, but which are usual and consequent

on such mode of transportation.   1 Fetter on Carriers, sec. 17; *Railroad v. Horst,* 93 U. S., 291.

It seems to us that the charge of the Court covered the entire case and, when properly construed, submitted it fairly and correctly to the jury under all the circumstances; and when this is done the parties have no just ground of complaint, or for asking anything more, especially if they have failed to request more definite instructions.   The charge appears to be in accordance with the law as stated by this Court in *Wallace v. Railroad,* 98 N. C., 494; *s. c.,* 101 N. C., 454; *Smith v. Railroad,* 99 N. C., 241; and his Honor perhaps was guided by those cases.

The defendant moved in this Court to dismiss the appeal under Rule 20, for failure to comply with the requirements of Rule 19.   A similar motion was made at this term, based upon substantially the same grounds, in *Davis v. Wall,* and we enforced the rules to the extent of dismissing the appeal in that case.   We again specially direct the attention of the profession to those rules and to that decision, as being very proper for their careful consideration when preparing cases on appeal.   We have discussed this case at some length, because the principles involved are of vital importance, and as the practical result will be the same, we prefer to decide it on the merits, instead of dismissing the appeal.

No Error.