MARY B. SMITH, by her next friend, A. F. SMITH, v. THE NORTH CAROLINA RAILROAD COMPANY.

(Filed 22 April, 1908).

1. Railroads—Duty to Passengers—Negligence—Train at Full Stop—Contributory Negligence—Nonsuit—Questions for Jury.

A railroad company is held to a high degree of care in providing at its regular stations places where passengers may alight with safety from its trains.    Therefore, when the evidence tended to show that plaintiffs, passengers on defendant's train, were thrown therefrom, when at a full stop at their place of destination, by two sudden jerks of the engine while they were on the platform hesitating to alight at a dangerous place they knew not to be the regular stopping place, but which was the only stopping place used at that station on that trip, it was error in the lower court to sustain defendant's motion as of nonsuit upon the evidence upon the ground of contributory negligence.    (*Shaw v. Railroad*, 143 N. C., 312, cited and distinguished).

2. Railroads—Stopping Places for Passengers—Duty of Railroad.

The obligations of a railroad company to provide a place of safety for passengers at its regular stations is not performed by stopping their trains before they reach their usual place or in stopping at such place with cars on parallel tracks so close together that by the projection of cars over the rail passengers, in order to enter or alight from trains, are forced into a crowded passway, where the slightest motion of either train or a rush of passengers themselves is not unlikely to result in painful and at times serious or even fatal injuries.

ACTION tried before *Councill, J.,* and a jury, at September Term, 1907, of ALAMANCE.

There was evidence on the part of plaintiff tending to show that on or about 7 June, 1906, the plaintiff and her sister

were passengers on defendant's train, going from Hillsboro to Mebane, N. C., the last being a schedule stop of the train; that plaintiff entered the second-class car (the train being crowded in the first-class car), in company with her sister, and that she had a ticket to go to Mebane, N. C.; that the conductor on the train took up her ticket; that when the train stopped at Mebane, where she lived and where she knew the locality, it did not stop at the place usually used for passengers to alight, but about fifty yards east thereof; that plaintiff, after the train stopped, got up from the seat and went with her sister to the platform of the car to alight, when she discovered that box cars were on a side track on the north side and a train with engine attached was on the south side of the car in which she had arrived; that the side tracks were close to the track on which was the car she was on (one witness said about six feet between the rails); that no one of the train crew was there to assist her to alight, and that it was not the place to alight, as she was well acquainted with the ground; that passengers are usually received and discharged on the south side of the track where the depot is situated; that when she reached the platform the local train began to move east along by where she stood on the platform; that she hesitated to attempt to alight there, and while she was standing there, not over half a minute, the train on which she was began to move slowly toward the station, and she supposed it was going to pull up to the place to alight, and instead it increased in speed and, by jerking, threw her and her sister off and injured them.

At the close of the plaintiff's evidence, on motion made in apt time a nonsuit was ordered, and plaintiff excepted and appealed.

*Long & Long* for plaintiff.

*W. B. Rodman, J. H. Pou* and *Parker & Parker* for defendant.

HOKE, J., after stating the facts: A common carrier is charged with the duty of carrying passengers to the point of their destination and there affording them fair and reasonable opportunity to alight from the cars and depart from the train yards or depot grounds in safety. In Hutchinson on Carriers, sec. 928, speaking of these obligations, the author says: "It is the duty of railway companies as carriers of passengers to provide platforms, waiting rooms and other reasonable accommodations for such passengers at the stations upon such road at which they are in the habit of taking on and putting off passengers. Their public profession as such carriers is an invitation to the public to enter and to alight from their cars at their stations, and it has been held that they must not only provide safe platforms and approaches thereto, but that they are bound to make safe for all persons who may come to such stations in order to become their passengers or who may be put off there by them all portions of their station grounds reasonably near to such platforms and to which such persons may be likely to go; and for not having provided such stational accommodations and safeguards railway companies have frequently been held liable for injuries to such persons." And in section 1117: "The passenger is entitled not only to be properly carried, but he must be carried to the end of the journey for which he has contracted to be carried, and must be put down at the usual place of stopping." And, further, in section 1118: "When the conveyance has reached the destination of the passenger the carrier must exercise the highest degree of practicable care, diligence and skill in affording the passenger sufficient time and opportunity to alight; and if the usual sufficient time be not given him to alight and he is compelled to go on to the next station, or if a sudden start of the conveyance be made whilst he is in the act of alighting, and an injury is occasioned to him thereby, it will be negligence in the carrier for the consequences of which he will be responsible." And Moore on Carriers states the same doctrine, as

follows (section 38) : "It is the duty of the servants of a carrier of passengers, especially when in charge of a railroad train, to stop it a reasonable time to allow passengers to board or alight with safety; and; in the absence of contributory negligence on the part of the passengers, the carrier is liable for injuries resulting from a failure to perform this duty. * * * The duty resting upon a carrier involves the obligation to deliver its passenger safely at his desired destination, and that involves the duty of observing whether he has actually alighted before the car is started again. If the conductor fails to attend to this duty and does not give the passenger time enough to get off before the car starts, it is necessarily this neglect of duty which is the primary and proximate cause of the accident, if injury be occasioned thereby to the passenger. It is not a duty due a person solely because he is in danger of being hurt, but it is a duty owed to a person whom the carrier had undertaken to deliver and who was entitled to be delivered safely by being allowed to alight without danger."

As in other duties looking to the safety of their passengers, carriers are held to a high degree of care in respect to these obligations, and such duties are in no sense performed by stopping before they reach their usual place or in stopping before or at such place, with cars on parallel tracks so close together that by the projection of the cars over the rails passengers, in order to enter or alight from trains, are forced into a crowded passway, where the slightest motion of either train or a rush of the passengers themselves is not unlikely to result in painful and at times serious or even fatal injuries.

An application of these principles to the facts presented gives clear indication that defendant was guilty of a negligent breach of duty in reference to plaintiff, a passenger on one of its trains, and there is no testimony to justify the ruling that as a matter of law plaintiff was guilty of contributory negligence. This is not a case which comes within the principle on which *Shaw v. Railroad,* 143 N. C., 312, was made to rest,

that a passenger who was injured by reason of going out on a platform while the train was in motion, in violation of a rule of the company posted in pursuance of the statute, was barred of recovery. In the case before us the train had come to a stop, the only one it intended to make at the station, and the plaintiff had gone out on the platform with a view of alighting, and before she was given opportunity to do so the train started, and by reason of two sudden jerks plaintiff was thrown from the train and injured. The facts bring the case more nearly within the decision of *Darden v. Railroad,* 144 N. C., 1, and must be determined on the principles of that well-considered opinion, as far as the same apply.

There was error in directing a nonsuit, and this will be certified, that a proper trial of the cause may be had.

Error.