D. D. SUTTLE v. SOUTHERN RAILWAY COMPANY.

(Filed 19 May, 1909.)

1. Railroads—Passengers—Caboose Cars—Care Required—Negligence.

A railway company owes it as a duty to its passengers on a freight train, whether on a passenger coach or caboose, or a car temporarily fitted for the purpose, to exercise the highest degree of care and diligence of which such trains are susceptible; and while the difference in character and purposes of the trains may and should be given due consideration, there is no relaxation as to the degree of care required from the company, and it is responsible for an injury caused to a passenger on a caboose car, occasioned by a breach of its duty to exercise the care indicated.

2. Same—Questions for Jury.

Contributory negligence cannot be determined as a matter of law upon evidence tending to show that the plaintiff was a passenger on a caboose car of defendant railroad company, got up from his seat, in a natural way, to get a drink of water, at a time his car was at a standstill at a station, while other cars of the freight train to which the caboose had been attached were being shifted, and that, when there was no reason to expect any harm would ensue, the engineer unexpectedly backed other cars onto the caboose with violence great and unusual, throwing him down, causing the serious injury complained of.

3. Same—Evidence—Contributory Negligence.

In an action for damages occasioned to a passenger on defendant railroad company's caboose car, caused by coupling other cars onto it in an unusually violent and unexpected manner, it is not

necessary for the passenger to anticipate extraordinary and un-
usual dangers incident to the company's negligence, producing the
injury complained of; and when from his testimony it appears
that he had been injured by getting up from his seat to go for a
drink of water, in the usual and natural manner, his testimony,
given in the course of a long cross-examination, that he was pay-
ing no attention when the coupling was made, should be under-
stood as meaning that he was not noticing the coupling at the
time and was not expecting to be injured by such a severe and
unusual shock.

ACTION tried before *Ward, J.,* and a jury, at October Term,
1908, of BUNCOMBE.

The evidence tended to show that, on or about 8 October,
1905, plaintiff was a passenger on a mixed train of defendant
company—a freight train, having a passenger coach attached—
from Shelby to Asheville, N. C., and while in the coach he was
knocked down and seriously injured by a sudden and unusual
jolt given by defendant's employees in shifting other cars of
the train which had been detached. Speaking to the occurrence,
the plaintiff testified, in part, as follows:

Question: "Did you get hurt at any time while on that trip?"

Answer: "Yes. We run out six miles, to a little station called
Washburn, and they stopped, and after stopping they cut the
coach that I was in loose from the freight—it was a mixed
train, and they were shifting some cars out—and while my
coach was standing there, I went to the water closet to get some
water, and just as I was in the act of getting hold of the dipper
the freight struck the front end of the coach, and I was stand-
ing in about four feet of the corner post of the water closet, and
that post struck me on the side of the head, here, and the blood
ran down, and there was the back of a seat right to my left and
that was shelving towards me, and when I fell it bent my back
over that, and from there I rolled over into the aisle; and I laid
there about a minute and a half, and while I was down I could
not move or speak. And there was one of the train hands in
there, working on his books, and, after I had laid there some
time, he asked me if I was hurt, and I did not answer him—I
could not answer; and after I revived a little I made an effort
to raise my right arm up and could not move it, and then I took

hold with my left hand and got hold of' this seat in front of me and failed to do it, and then I asked him if he would help me up, and he came and helped me up, and as I went back to my seat I noticed most of the cushions off of the seats on the floor, and my seat was that way. The lick was so heavy that it had driven the seats from under the cushions and many of the cushions were on the floor. After I got in my seat, I was sitting, holding to the seat in front of me, and they slashed into it again, and I hollered, and the flagman, or whoever it was that was in with me, jumped up and ran out, and from that on there was no further trouble with the train."

Q. "You say they 'slashed' into it?"

A. "I mean that the freight cars that were shifting—the cars that were making some change—and while I was standing—"

Q. "You say that they slashed into you; the jury don't know what that means."

A. "They backed into it with such force."

Q. "With how much force did they come back the second time?"

A. "Equally as much as the first time, or more."

At the close of plaintiff's testimony defendant moved to non-suit plaintiff. Motion denied, and defendant excepted.

Under a proper charge, the question of defendant's responsibility was submitted on the three ordinary issues in actions of negligence :

First. As to negligence of defendant causing the injury.

Second. Contributory negligence on part of plaintiff.

Third. Damages.

There was verdict in favor of plaintiff, and from judgment on the verdict defendant excepted and appealed.

*Adams & Adams, Frank Carter* and *H. C. Chedester* for plaintiff.

*Moore & Rollins* for defendant.

HOKE, J., after stating the case : There has been no error committed in the trial of this case which gives the defendant any just ground of complaint.

Where a person has been received as a passenger on one of these mixed trains, whether in a passenger coach or caboose or a car temporarily fitted for the purpose, he is entitled to the highest degree of "care and diligence of which such trains are susceptible." While the difference in the character and purposes of the trains may, and should be, given due consideration in reference to their proper management and control, there is no relaxation as to the degree of care required towards a passenger on the part of the company's employees, and for a breach of duty of the kind indicated the company may be' held responsible. *Miller v. Railroad,* 144 N. C., 545; *Railroad v. Horst,* 93 U. S., 291; *Sprague v. Railroad,* 92 Fed., 59; *Railroad v. Holcomb,* 44 Kans., 332.

In *Sprague v. Railroad, supra, Goff, Circuit Judge,* for the Court, quotes with approval from *Railroad v. Horst, supra,* and, in reference to this matter, said:

"The court below seems to have founded its conclusion on the fact that the plaintiffs were traveling in a caboose car, and not on a regular passenger train. But we are of opinion that, as the defendant sold tickets to the plaintiffs, to be used in said car, which was provided for the accommodation of passengers in general, the plaintiffs were entitled to demand and have of and from the defendant the highest possible degree of care and diligence, regardless of the kind of train they were on. A railroad company is liable for the negligence of its servants resulting injuriously to its passengers, whether they are traveling in the luxurious cars of the modern train or in the uncomfortable caboose of the local freight; for in all such cases the law requires that the highest degree of care that is practicable be exercised. The reasons for this rule are well known and are based upon wise public policy and the plainest principles of justice. The Supreme Court of the United States, in alluding to this matter (*Railroad v. Horst,* 93 U. S., 291), said: 'Life and limb are as valuable, and there is the same right to safety, in the caboose as in the palace car. The same formidable power gives the traction in both cases. The rule is uniformly applied to passenger trains. The same considerations apply to freight trains. The same dangers are common to both. Such care and diligence are

as effectual and as important upon the latter as upon the for-
mer, and not more difficult to exercise. There is no reason, in
the nature of things, why the passenger should not be as safe
upon one as the other. With proper vigilance on the part of
the carrier, he is so. The passenger has no authority upon
either, except as to the personal care of himself. The conductor
is the animating and controlling spirit of the mechanism em-
ployed. The public have no choice but to use it.   *   *   *
The rule is beneficial to both parties. It tends to give protec-
tion to the traveler, and warns the carrier against the conse-
quences of delinquency. A lower degree of vigilance than that
required would have averted the catastrophe from which this
litigation has arisen. *Dunn v. Railroad,* 58 Me., 187; *Tuller
v. Talbot,* 23 Ill., 357; *Railroad v. Thompson,* 56 Ill., 138.' "

This being the correct principle, a mere statement of the testi-
mony above set out affords convincing evidence of negligence on
the part of the defendant company causing the injury, and
justifies the finding of the jury on the first issue. The defend-
ant did not seriously contend that there was error in this respect,
but it was earnestly urged that upon the entire testimony the
court should have held, as a matter of law, that the defendant
was guilty of contributory negligence barring recovery, and this
on the evidence above stated, and the additional questions and
answers appearing in the course of a long cross-examination, as
follows:

Question: "You know that the jolting and jars on a freight
train are rougher than they are on a passenger train, don't
you?"

Answer: "I don't know about the couplings."

Q. "Did you ever see them handling the trains—the starting
and the coupling?"

A. "Yes; I know they are rough."

Q. "I ask you if you were not simply standing in that car,
paying no attention when the coupling was made, and you fell
over on the side?"

A. "Of course, I was paying no attention, my coach being
standing still, and I was struck and knocked down."

There is doubt if this answer should be given any special

significance on the subject, coming, as it did, in the midst of a prolonged examination, in which the witness had placed the entire facts before the jury. Clearly the witness did not mean to say that he was at the time entirely unobservant of care for his own safety, but, in reference to the question, and by fair intendment, he should be understood to mean that he was not noticing the coupling at the time, nor expecting to be knocked down by any such severe and unusual shock. Certainly, he had nothing to indicate any lack of care, for he had only gotten up to get a drink of water, and the jolt came just as he was getting hold of the dipper. In any event, the authorities are to the effect that getting up for this purpose, in the usual way, and on a train of this character, does not import negligence as a matter of law. While a passenger on these mixed trains is held to a degree of care commensurate with the increased dangers which are ordinarily incident to their management, he is entitled to have his conduct weighed and his rights determined in reference to such trains when *carefully* and *properly* managed, and he is not required to anticipate such extraordinary and unusual dangers as are incident to the company's negligence.

This is the rule as stated by *Associate Justice Walker,* for the Court, in the case of *Marable v. Railroad,* 142 N. C., 557, in which it was held that:

"4. In taking passage on a freight train a passenger assumes the usual risks incident to traveling on such trains, when managed by prudent and competent men in a careful manner."

And, in reference to the question directly presented here, it is very generally accepted that standing up, under certain circumstances, or getting up from one's seat for a natural purpose, or going for a drink of water and the like, is not negligence *per se,* but the question should, as a rule, be referred to the jury under a proper charge. *Tillett v. Railroad,* 118 N. C., 1031; *Bunn v. Railroad,* 64 N. J. L., 30; *Railroad v. Masterson,* 16 Ind. App., 323; Hutchinson on Carriers (3d Ed.), sec. 1217.

In *Tillett's case* it was held:

"7. A passenger has a right to presume that the servants of the carrier will properly discharge their duties. Consequently,

one who enters a railroad passenger car is not guilty of contributory negligence because he fails to rush into the first seat he reaches, although he knows the train is about to be coupled."

The case to which we were referred by counsel for the defendant *(Smith v. Railroad,* 99 N. C., 241) does not conflict with the positions sustained by these authorities. In that case the plaintiff was held guilty of contributory negligence because, from his own testimony it appeared that he had taken a position on the arm of the car seat, thus inviting the injury from which he had suffered; whether, in the present and improved methods of control and management of these trains, this ruling would now obtain, a question to which we were invited by the argument of plaintiff's counsel, it is not necessary to determine, for in the case before us no such fact appears. The evidence shows that plaintiff, a passenger on defendant's train, got up in a natural way and went for a drink of water, at a time when his car was at a standstill, and when there was no reason to expect that any harm would ensue, and when none would have ensued if defendant's train had been carefully and properly managed.

There is no error, and the judgment below is affirmed.

No Error.