BROWN, J., dissenting; HOKE, J., concurring in opinion of Court.
Action to recover damages for personal injuries caused by a car, on which plaintiff had been riding as a passenger, passing over his foot, making amputation necessary.
The plaintiff, a man 69 years old, was a passenger on defendant's train on the night of 26 October, 1910, from Louisburg, N.C. to Franklinton, N.C. The train consisted of six box cars and two passenger coaches. The defendant operates a branch line between Louisburg and Franklinton, and in getting into the station at the latter point the trains pass through a switch north of the passenger depot. On the night of this accident the engine stopped at this switch to have it changed, in order to permit the train to pass onto a side-track and up to the passenger depot. When the engine stopped at this point, which was 386 feet from the depot, the passenger coach on which plaintiff was riding was seven car lengths further from the depot, making a total distance of more than 700 feet. At this point the plaintiff went on the platform of the car. In describing the circumstances under which he went out on the platform, the plaintiff says: "At any rate, just before Mr. White had gotten on, or about the time he got on the steps — had stepped down there — was when I came out of the coach, and the train had kind of slowed a little and there was a slack between the cars (lost motion) by the connection being a foot, probably, on the box cars especially. There is a foot difference, probably — a foot play between two box cars. There is not so much difference between the coaches; that is, the box cars in front. Those box cars were in front of me. It being dark there, and I couldn't see, there was a jerk, and I caught hold of the iron rod and sat down, like this, with my feet down here, and when I sat (525) there I looked to see, and the only thing was Professor White right across on the steps.
"I sat down on the platform of the coach with my feet on the first step. I think there are about four steps, counting the top one, down to the bottom one of the steps to get off. When that jerk came I had hold of this iron, and sat right down on the end of the coach, not on the seat."
The plaintiff remained in this position, sitting on the platform and steps of the car, until the train reached the usual place for slowing down the train, for the purpose of permitting passengers to alight when the train reached a point opposite the passenger station, and according to his evidence it then stopped.
The passenger station is on the southeast side of the track at Franklinton, and a light is kept burning in front of the station. Plaintiff says that there was a light at the station where it stops regularly, on *Page 440 
the east side, and the evidence of all the witnesses familiar with the depot is to the same effect.
It is agreed that plaintiff was attempting to alight on the side of the train opposite the passenger station.
There was evidence on the part of the plaintiff that passengers were in the habit of alighting on the side opposite the passenger station, without objection by the defendant, and that two passengers got off on that side to one on the other, and that it was equally safe, except it was a few inches lower and there was no light on that side.
There was also evidence on the part of the plaintiff that the train stopped at the usual stopping place for passengers to alight, and that he was then sitting on the top step of the platform; that after the train stopped, holding to the iron rail with one hand, he slid off until his feet were on the ground and as he was straightening up there was a sudden jerk of the train; that he was stricken in the back, knocked down, and dragged eight or ten feet, when the train stopped again.
Other passengers were on the platform with the plaintiff, and got off about the same time, and on the same side.
The defendant offered evidence tending to prove that the usual (526) and proper place for passengers to alight was on the side next to the passenger depot; that the plaintiff was injured on the platform, or while trying to alight while the train was in motion.
The plaintiff also offered evidence that the step on which passengers alighted was left on the platform, and that no employee of the defendant was present to assist or notify passengers.
There was a verdict in favor of the plaintiff, and from a judgment rendered thereon the defendant appealed.
At the conclusion of the evidence the defendant moved for judgment of nonsuit, upon three grounds:
(1) That there was no evidence of negligence on the part of the defendant, causing injury to the plaintiff.
(2) That the plaintiff was guilty of contributory negligence, on his own evidence.
(3) That the plaintiff was injured while riding on the platform of the train, in violation of section 2628 of the Revisal.
In the determination of this motion, we must accept the evidence of the plaintiff as true, and, guided by the rule of the "prudent man," which is the standard, must consider not only the evidence of the *Page 441 
witnesses, but also the situation of the parties and the circumstances surrounding them.
The plaintiff was a passenger on a train carrying passengers and freight, and as such assumed the usual risks incident to traveling on such trains, when managed by prudent and careful men in a careful manner,Marble v. R. R., 142 N.C. 563; Usry v. Watkins, 152 N.C. 760; but he was entitled to the highest degree of care of which such trains are susceptible, and had the right to assume that the employees of the defendant would perform their duties and that the train would be operated with care. Suttle v. R. R., 150 N.C. 673. The train had reached Franklinton, which was a terminus of the line, and had stopped at the usual place for passengers to leave the train. This was evidence of an invitation to alight. Nance v. R. R., 94 N.C. 619; Denny v.R. R., 132 N.C. 340; R. R. v. Cousler, 97 Ala. 235; Roub v. (527)R. R., 103 Cal. 473; Fetter on Carriers, sec. 58.
When the train reached its destination, it was the duty of the defendant to exercise the highest degree of care practicable, and to give the plaintiff sufficient time and opportunity to leave the train, and if it failed to do so, and there was a sudden start of the train as he was alighting, this would be negligence. Hutchison on Carriers, sec. 1118;Smith v. R. R., 147 N.C. 450.
If passengers could leave the train on either side, and one side was more dangerous than the other, it was the duty of the defendant to have some employee present to advise the passengers. Ruffin v. R. R.,142 N.C. 128.
It was also the duty of the plaintiff to leave the train with reasonable promptness, and to exercise the care of a person of ordinary prudence in doing so, and if he failed in this duty he was negligent.
There are the duties imposed by law upon the plaintiff and defendant respectively, and when considered in connection with the evidence of the plaintiff, viewed in the light most favorable to him, as it is our duty to do in passing on a motion to nonsuit, we are of opinion that there was evidence of negligence on the part of the defendant, and that the plaintiff could not be declared guilty of contributory negligence as a matter of law.
According to the evidence of the plaintiff, the train had reached its destination and had stopped at the usual place for passengers to alight; no step for passengers was placed on either side of the train, and no employee of the defendant was present to advise or assist, and while he was getting off the train with reasonable promptness there was a sudden movement of the train, which injured him.
This is undoubtedly evidence of negligence. Moore on Carriers, 674; *Page 442 
Hutchison on Carriers, sec. 1118; Nance v. R. R., 94 N.C. 619; Tillett v.R. R., 118 N.C. 1031; Smith v. R. R., 147 N.C. 450.
When the train stopped, the plaintiff was sitting on the platform, and he immediately attempted to get off on the side opposite the passenger station. He had been a frequent passenger on the train and usually got off on this side as did a majority of the passengers, and (528) without any objection from the defendant. He did not rise to his feet, but held on to the iron railing and slided off, and after his feet reached the ground and he was getting in an erect position, or, as he says, straightening up, the sudden movement of the train injured him.
We are not prepared to hold, as matter of law, that it is negligence for a passenger, 69 years of age, when alighting from a train in the night, to let himself to the ground gradually and slowly, and particularly so in view of the fact that he had the right to assume that the defendant would not be negligent, and that the train would not move before he was given a reasonable time to get off; nor can we say it was negligent to get off on the side he did, when it was in evidence that he had done so repeatedly, without objection by the defendant, and that passengers usually got off on that side.
His Honor gave to the defendant all it was entitled to on the question of contributory negligence when he instructed the jury, in substance, that the plaintiff was negligent if he failed to exercise the care of one of ordinary prudence similarly situated.
If, however, it should be held that there is evidence of negligence on the part of the plaintiff, this would not prevent a recovery unless it was contributory, and it could not be contributory unless a real proximate cause of the injury, and according to the evidence of the plaintiff, if believed, the real cause was the negligent act of the defendant in moving its train while the plaintiff was alighting.
The principle is applied by Justice Brown in Darden v. R. R., 144 N.C. 1, to one attempting to alight from a train in motion, which was stronger evidence of contributory negligence than is shown by the plaintiff's evidence, and he there says: "It is useless to discuss the alleged negligence of the plaintiff in attempting to alight from a moving train, for if his evidence is to be believed, the proximate cause of his injury in being thrown to the ground was the premature signaling to the engineer by the brakeman to `Go ahead.' Had it not been for the brakeman's negligence, the plaintiff would doubtless have stepped safely to the ground."
The situation of the plaintiff at the time of his injury, if his (529) evidence is believed, was not a cause, but a mere condition, and *Page 443 
the distinction between the two is well recognized. In Black v. R. R.,193 Mass. 450, the Court, speaking of this distinction, says: "Negligence of a plaintiff at the time of an injury caused by the negligence of another is no bar to his recovery from the other unless it was a direct, contributing cause to the injury, as distinguished from a mere condition, in the absence of which the injury would not have occurred. . . . The application of this rule sometimes gives rise to difficult questions. But in this connection the doctrine has been established that, when the plaintiff's negligence or wrongdoing has placed his person or property in a dangerous situation which is beyond his immediate control, and the defendant, having full knowledge of the dangerous situation, and full opportunity, by the exercise of reasonable care, to avoid any injury, nevertheless causes an injury, he is liable for the injury. This is because the plaintiff's former negligence is only remotely connected with the accident, while the defendant's conduct is the sole, direct, and proximate cause of it."
Nor do we think the fact that the plaintiff was on the platform immediately before his injury bars a recovery under section 2628 of the Revisal, which reads as follows: "In case any passenger on any railroad shall be injured while on the platform of a car, or on any baggage, wood, or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside the passenger cars then in the train, such company shall not be liable for the injury: Provided, said company at the time furnish room inside its passenger cars sufficient for the proper accommodation of its passengers."
The case does not come within the letter or spirit of the statute, because the plaintiff was not injured "while on the platform," nor was he at the time of his injury violating the printed regulations of the defendant which prohibit passengers from going on the platform only when the car is in motion.
The statute was intended for the protection of passengers and railroads, and should be reasonably construed, and there is as much reason for saying that a passenger who remains in his seat until the train stops, and is injured as he is stepping from the train, is injured "while on the platform," as there is for that construction to be placed on (530) the plaintiff's version of his conduct.
As was said in Shaw v. R. R., 143 N.C. 315, and affirmed in Smith v.R. R., 147 N.C. 451: "The statute, in plain terms, relieves the company from liability in the case of a passenger injured while on the platform of a moving train, when the company, as in this case, has complied with its terms," and as the train was not in motion at the time of his injury, the statute has no application under the circumstances in this case. *Page 444 
Nor did the fact that the plaintiff had been on the platform have anything to do with his injury. If he had lost his rights as a passenger because violating the statute, the train, according to his evidence, had stopped, and he then had the right to get off, and if in doing so he was injured by the negligence of the defendant, his being on the platform prior to that time was not even a contributing cause.
The language used by the Court in Wood v. R. R., 49 Mich. 372, is in point: "It is claimed that it was negligence on the part of the plaintiff in going onto and standing upon the car platform and steps while the car was in motion. This may be true and might have prevented a recovery had the plaintiff been injured while standing there before the train stopped. Such, however, was not the fact, and his standing there neither caused nor contributed to the injury, other than by enabling the plaintiff to step off the train immediately upon its coming to a stop. Upon the stopping of the train he had then a right to get off, whatever his position up to that time may have been, and the danger of his position up to then cannot be charged against him, if he then, in the usual and customary manner and place, attempted to get off."
His Honor charged the jury on this phase of the case as follows: "My attention has been called to a statute passed by the Legislature, which I will read to you: `In case any passenger on any railroad shall be injured while on the platform of a car, or any baggage, wood, or freight car, in violation of printed regulations of the company, posted at the time in a conspicuous place inside its passenger cars then in the train, such company shall not be liable for the injury: Provided, (531) said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of its passengers.' It is admitted, gentlemen, that the notices which have been introduced, one placed on the outside of the passenger coach which reads, `Passengers not allowed to stand on the platform,' and notices posted inside the coach, `Passengers are prohibited from going on platforms or between cars while the train is in motion, and are warned not to allow their heads or limbs to project from car windows.' The defendant company cannot make a contract which would excuse it from responsibility for its own negligence; neither could it makes rules or regulations for the movement and control of its trains which would excuse it from its own negligence; but the Legislature has seen proper to pass a law which prohibits a passenger from recovering if he stands on the platform, if he is injured while on the platform, contrary to notices which are posted. So that, if you should find from the evidence that the plaintiff went out and stood upon the platform, or sat down on the platform with his feet on the steps, while the train was in motion; and while it was in motion, *Page 445 
he having placed himself there in violation of a notice, he is prohibited by the statute from recovering, if he received injury while on the platform. And that means, not simply if he might get his hand mashed by the cars coming together, but if he placed himself there so that he was thrown from that place to the ground by the ordinary movement of the cars, he would be prohibited from recovering by reason of the notice, and it would be your duty to answer the second issue `Yes,' whatever you might find as to the first; for, although the defendant might have been negligent in not moving its train with proper skill and proper care, still, under the law and the posted notices, its engineer could not anticipate that a passenger could be standing on the platform, and if he were standing or sitting there and the train in motion, and were thrown out, he could not recover. But although you might find that he went out and sat down on the platform while the train was in motion, and he remained there without injury until the train stopped, if you find it did stop, and when it stopped at the usual place of stopping the train for passengers to alight from the train, while it was stationary, and before he had reasonable time to alight, the train (532) moved forward, and by its motion is going forward struck him and knocked him down and ran over his foot and injured him, he would be entitled to recover."
The latter part of this instruction is the subject of exception by the defendant, because it concludes with the words, "would be entitled to recover," and this exception finds support in what is said in Miller v. R.R., 143 N.C. 115, but this language does not stand alone, and must be considered with reference to the other parts of the charge, and when so considered it will be found that his Honor gave specific directions as to how the issues should be answered by the jury, according to their findings on the different contentions of the parties.
It was not intended to be decided in the Miller case, nor do we think it has been so decided in any other, that counsel may not ask the judge presiding to instruct the jury upon general principles applicable and necessary to an understanding of the case, nor that the judge cannot do so of his own motion.
The defendant also excepts because, as it contends, his Honor refused to instruct the jury to answer the first issue "No," if they found the plaintiff was injured while attempting to jump from a moving train.
As was said in Cox v. R. R., 149 N.C. 87: "The verdict, like the charge, must be construed with reference to the trial."
His Honor instructed the jury that they could not answer the first issue "Yes" unless they found that the plaintiff was injured while getting off the train after it stopped, and then presented the defendant's *Page 446 
contention that the train was in motion at the time of the injury. He said: "If you find from the evidence that the train was being properly conducted and in motion, and shall further find that while it was in motion the plaintiff placed himself on the steps of the platform, and while the train was in motion the plaintiff, from his position in which he had placed himself, either fell from his position or attempted to alight from the train while it was in motion, and fell or was knocked down by the cars, the defendant would not be guilty of negligence, and it would be your duty to answer the first issue `No.' One who (533) rides on a mixed train — that is, a train made up partly of freight cars with coaches attached — must take notice of the mode of moving such trains, and give a due regard thereto; and if you shall find from the evidence that the engineer slowed down his train and did not stop his engine, and thereby stop the movement of the passenger coaches, but moved slowly, and when he stopped his engine the passenger coach on which the plaintiff moved stopped at the time he stopped his engine, and afterwards and while plaintiff was attempting to alight, the passenger coach moved forward on account of the freight cars in front and between the passenger coach and the engine, taking up slack, it would not be negligence of the defendant, and you would answer the first issue `No.' Contributory negligence is where the negligence is a contributing cause to the negligence already in motion, or put in motion during the existence of the contributing act of negligence; and if by the joint negligence of the two the injury is caused, each in part being the cause of the injury — to illustrate: if the defendant was negligent and the defendant's negligence was the proximate cause of the injury to the plaintiff, and the plaintiff was negligent and his negligence contributed to the injury, it would be a case of negligence on the part of the defendant and contributory negligence on the part of the plaintiff. If you shall find from the evidence, by its greater weight, that the plaintiff attempted to alight from a moving train, it would be a case of negligence on his part, because it was the duty of the defendant to stop its train at the station, and a reasonably prudent man, careful of himself to avoid injury, would observe that the motion of the train, stepping from that to the ground, which was stationary, was calculated to throw him — cause him to fall and get hurt; and should you so find from the evidence, it would be your duty to say that he was contributing to the act of the defendant, if you find the defendant was negligent."
We do not think the jury could fail to understand from this charge that the issues should be answered against the plaintiff if he was injured in attempting to jump from the train or while it was in motion. Indeed, his Honor, we think inadvertently, went too far in behalf of the *Page 447 
defendant, when he substantially told the jury to answer the second (534) issue "Yes" if they found the plaintiff was careless.
The defendant further excepted to the following charge: "I charge you that if you shall find from the evidence, by its greater weight, that the train was slowed down on approaching the depot at Franklinton, at the usual place of slowing down the train, and shall further find from the evidence that the train came to a stop before the plaintiff attempted to alight from the train, and that just as the plaintiff was in the act of alighting and before he had a reasonable time to alight, and before the passengers who were to alight at the station had a reasonable time to alight, the defendant's engineer suddenly, without notice, moved the train forward, which motion of the train caused the plaintiff to fall, or struck him and knocked him down, and the train ran over his foot and injured him, it is your duty to answer the first issue `Yes,' although the plaintiff was getting off on the opposite side of the train from the station, and on the side that passengers were not accustomed to alight."
This instruction presents the question of proximate cause, and is equivalent to charging the jury that although the plaintiff was negligent in getting off on the wrong side of the train, and in the manner adopted by him, that if the train had stopped at the usual place, and he was attempting to alight and was injured by a sudden movement of the train, a reasonable time not being given to leave the train, that the sudden movement of the train was the proximate cause of the injury, which is in accordance with authority. Darden v. R. R., 144 N.C. 3; Smith v. R. R.,147 N.C. 451.
The following excerpt from Moore on Carriers, sec. 38, is quoted and approved in Smith v. R. R., supra: "The duty resting upon a carrier involves the obligation to deliver its passenger safely at his desired destination, and that involves the duty of observing whether he has actually alighted before the car is started again. If the conductor fails to attend to this duty and does not give the passenger time enough to get off before the car starts, it is necessarily this neglect of duty which is the primary and proximate cause of the accident, if injury be occasioned thereby to the passenger. It is not a duty due a person solely because he is in danger of being hurt, but it is a duty (535) owed to a person whom the carrier had undertaken to deliver and who was entitled to be delivered safely by being allowed to alight without danger."
We have discussed the principal questions raised by the exceptions, and those mainly relied on on the oral argument and in the briefs, and have also considered the other exceptions not referred to, and upon the whole record find no error which entitles the defendant to a reversal of the judgment. *Page 448 
There are thirteen exceptions to evidence, which are not discussed in the brief, because counsel were doubtless of opinion, as we are, that they were without merit.
No error.
Cited: Thorp v. Traction Co., 159 N.C. 35; Brown v. Power Co.,171 N.C. 558.