## A. T. BARNES v. SOUTHERN RAILWAY COMPANY.

(Filed 14 April, 1915.)

**1. Carriers of Passengers—Freight Trains—Negligence—Contributory Negligence—Trials—Evidence.**

Evidence that a passenger on a freight train seated himself upon a seat provided for passengers and was violently thrown from his seat by the sudden and unexpected movement of the train is insufficient upon the issue of contributory negligence; and as the defendant is held to a high degree of care consistent with the operation of trains of this character, the fact that the injury occurred in the manner stated affords sufficient evidence of defendant's actionable negligence to sustain a verdict in plaintiff's favor on that issue.

**2. Negligence—Proximate Cause—Trials—Instructions.**

In an action to recover damages arising from the defendant's negligence, and the questions in dispute involve only those of whether the act complained of was negligently done, and if it caused the injury, the judge charged the jury that they must find that the defendant was negligent and that the negligence caused the injury, in order to answer the issue in plaintiff's favor. *Held,* the charge was not objectionable as leaving out the element of proximate cause.

APPEAL by defendants from *Ferguson, J.,* at November Term, 1914, of WILSON.

Action to recover damages for personal injury, caused, as the plaintiff alleges, by the negligence of the defendant while he was a passenger in a caboose attached to a freight train of the defendant.

The defendant denied that it was negligent and pleaded that the injury to the plaintiff was caused by his own contributory negligence.

It was admitted that the plaintiff was a passenger on the train of the defendant at the time of his injury.

The plaintiff testified in part as follows: That he was 61 years of age, and lived near Lucama, Wilson County, all his life; was a farmer and fertilizer inspector, and was employed by the Commissioner of Agriculture of North Carolina in the latter capacity on or about 25 March, 1913. That his duties required him to go about in certain territory and take samples of fertilizer and other products; see that they were branded and taxes paid, etc. That he was paid for these services $3 per day and expenses. That he was at Rural Hall on 25 March, 1913, on his regular trip, and was going from there to Pilot Mountain. That between 3 and 4 o'clock on that day he purchased a ticket from Rural Hall to Pilot Mountain from the agent of the defendant company, paying 30 cents for it, and got aboard the train of the defendant company, which was a mixed train, that is, consisting of a caboose attached to said car in which passengers were allowed to ride by the company. The caboose had cush-

ioned seats running on each side, and a partition, and there was a stove
in it. It had no fire in it. That when he got on the car there were two
gentlemen in it, one named Hoover, one named Swanson. That Mr.
Hoover was sitting in a chair and Mr. Swanson was sitting on one of
the seats running on the side of the car, and he took the seat between
Mr. Swanson and the stove. That when he got on the train some one
said it was a little late, and it stayed in Rural Hall about twenty or
thirty minutes. That when he got on the train it pulled out about 30
or 40 yards and stopped a little to the left of the station. That the first
thing he knew was a jolt which threw him off the seat and against the
stove; that there was a rod running around the stove, and his chin struck
this rod, and his whole weight went across his neck. When the train
stopped, Mr. Hoover and Mr. Swanson asked if he was hurt. The wit-
ness said that he was hurt so bad that he could not see, and that he did
not know but what a train had run in and there had been a collision.
That either Mr. Swanson or Mr. Hoover asked him if he was hurt, and
the other one said, "Don't you see he is hurt? There is blood running
out of his face." That after they helped him up, he turned sick and
asked for water; that he was nauseated. That two or three persons came
in the car and wanted to know who was hurt. That the conductor came
in and said he would have to make a report, and asked the witness his
name, his residence, and his age. That before the jolt came he was sit-
ting on the seat, and that he did not hear any warning prior to the jerk;
that there was a clash all at once; that he fell toward the engine, and
that some one fell on him, and he thought it was Mr. Swanson. That
he stopped work about 11 or 12 April and went home and consulted
Dr. I. W. Lamm. That before he came home he went to work four or
five days, and as he did not get any better, he stopped. That about
12 April, finding that he could not continue his work, he saw the Com-
missioner, Major Graham, and told him that he would have to stop.
This was about 12 April. That he was hurt in his neck and leg and
suffered a great deal of pain, and has never been able to use his neck
since, and his neck is still stiff, and when he tried to work his neck
hurts a great deal. That his arm is affected and he cannot do as much
as he could before the injury; that he could not carry a bucket of water.

The defendant offered evidence tending to prove that the movement
of the train of which the plaintiff complained was not unusual or ex-
traordinary, and was such as might be expected upon freight trains, but
offered no evidence contradicting the plaintiff as to what he was doing
at the time he was injured.

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as
alleged in the complaint? Answer: "Yes."

2. Did the plaintiff, by his own negligence, contribute to his injuries, as alleged in the answer? Answer: "No."

3. What damages has the plaintiff sustained? Answer: "$1,770."

There was a judgment upon the verdict in favor of the plaintiff, and the defendant appealed.

*W. A. Finch and H. G. Connor, Jr., for plaintiff.*
*Woodard & Hassell for defendant.*

ALLEN, J. The principal exceptions relied on by the defendant are to the refusal to enter judgment of nonsuit at the conclusion of the evidence and for failure to give proper instructions on the issue of contributory negligence.

It is not necessary to set out and review the instructions given and refused on the second issue, as we find no evidence of contributory negligence. According to all the evidence of the plaintiff and the defendant, the plaintiff entered the car and took a seat prepared by the defendant for passengers and was injured by the sudden movement of the train while sitting quietly talking to other passengers, and in this we find no evidence of negligent or wrongful conduct on his part.

We are also of opinion that there was evidence of negligence, as proof that the plaintiff was injured in the manner described while a passenger on the train of the defendant is itself some evidence of negligence. 5 R. C. L., 74; *Marable v. R. R.,* 142 N. C., 557; *Gleeson v. R. R.,* 140 U. S., 435.

In the *Marable case* the plaintiff was injured while a passenger in a caboose of a freight train by a sudden movement of the train, and the instruction was approved that "If there was such a sudden and violent stopping of the train that plaintiff was thrown from his seat, it would require explanation from the defendant, and the inquiry naturally arises, Why was the train so suddenly stopped? The answer would naturally come from the defendant, as the plaintiff was in the caboose and the defendant's servants were in charge of the train"; and in the *Gleeson case* the Court said: "Since the decisions in *Stokes v. Salstontall,* 38 U. S., (13 Pet.), 181, and *New Jersey R. and Transp. Co. v. Pollard,* 89 U. S. (22 Wall.), 341, it has been settled law in this Court that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance, and was followed at the present term in *Inland and Seaboard Coasting Co. v. Tolson,* 139 U. S., 551."

The reasons for the application of this principle are stated in 5 R. C. L., 77, to be: "(1) The contractual relation between the carrier and passenger, by which it is incumbent on the carrier to transport with safety; hence the burden of explaining failure of performance should be on the carrier. (2) The cause of the accident, if not exclusively within the knowledge of the carrier, is usually better known to the carrier, and this superior knowledge makes it just that the carrier should explain. (3) Injury to a passenger by a carrier is something that does not usually happen when the carrier is exercising due care; hence the fact of injury affords a presumption that such care is wanting"; and the exceptions to the rule as stated on page 82 are when the evidence shows that the cause of the injury is outside the control of the carrier, and has no connection with the machinery or appliances of transportation and so disconnected from the operation of the business of the carrier as not to involve the safety or sufficiency of the instrumentalities of transportation or the negligence of its servants.

The fact that the plaintiff was injured while riding on a freight train does not absolve the defendant from liability for negligence.

A carrier of passengers on freight trains owes to them the same high degree of care which it owes to passengers on regular passenger trains, although it is not liable for injuries resulting from such sudden starts and stops as are necessary for the operation of such trains. Moore on Carriers, 1264.

The other exceptions relied on in the brief are to parts of his Honor's charge in which, after telling the jury that they must find that the defendant was negligent, added: "and that that negligence caused the injury, before answering the first issue 'Yes,'" the objection being that this portion of the charge did not take into consideration proximate cause.

In some instances it is desirable to instruct the jury carefully and accurately as to proximate cause, but in this case the jury could not have been misled, as on all the evidence the plaintiff was injured by a sudden movement of the train, and the only matter in controversy was whether this movement was one that was ordinary and usual or extraordinary and unusual.

The instructions on the first and second issues were more favorable to the defendant than it was entitled to, and we find no error on the third issue.

No error.