H. C. KEARNEY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 10 April, 1912.)

1. Carriers of Passengers—Mixed Trains—Risks Assumed—Duty of
   Carriers—Negligence.

   While a passenger on a train carrying passengers and freight
   assumes the usual risks incident to traveling on such trains, the
   employees of a railroad having such trains in charge are held to
   the highest degree of care of which they are susceptible, for his
   safety and protection, and he has a right to assume that the train
   will be run accordingly.

2. Carriers of Passengers—Stations—Stopping of Trains—Invitation
   to Alight.

   When a railroad train stops at its usual place at its station
   for passengers to leave the train, it is evidence of an invitation to
   the passengers thereon to alight.

3. Same—Reasonable Time—Starting of Train—Negligence.

   When a railroad train carrying passengers reaches its usual
   stopping place at its station for the passengers to alight and

leave, it is the duty of its employees in charge to exercise the highest degree of care practicable in affording them sufficient time for the purpose; and it is actionable negligence for them to suddenly start the train to the injury of a passenger then alighting.

4. Carriers of Passengers—Stations—Place to Alight—Degrees of Safety—Custom—Duty of Carrier.

When it is customary for passengers to alight from either side of a train at its regular stopping place at a station, and one side is more dangerous than the other, it is the duty of the carrier to have an employee present to warn the passengers in alighting at the more dangerous place.

5. Carriers of Passengers—Alighting from Trains—Reasonable Time —Duty of Passenger—Negligence—Proximate Cause.

A passenger, in failing to leave a train which has stopped at its customary destination at a railway station, with reasonable promptness, and to exercise the care of a reasonable person in doing so, is negligent in his duty to the carrier, and may not recover damages for an injury thereby proximately caused.

6. Carriers of Passengers—Stations—Safe Place to Alight—Degrees of Safety—Custom—Duty of Carrier—Nonsuit—Evidence.

When there is evidence tending to show that the plaintiff, a passenger on a mixed train which had stopped at its usual place for the passengers to get off, where they were in the habit of alighting on each side of the coach, but one side was more dangerous for the purpose than the other, got off on the more dangerous side and that no employee of the defendant railroad company was there to advise or assist him, or place the step used for the purpose; that while he was getting off with reasonable promptness he was injured by a sudden and unexpected movement of the train, a judgment of nonsuit should be denied, as it is sufficient to take the issue of negligence to the jury.

7. Carriers of Passengers—Alighting from Trains—Manner of Alighting—Contributory Negligence—Questions for Jury.

When there is evidence of negligence on the defendant carrier's part, in causing an injury to the plaintiff, a passenger on its train, by the sudden and unexpected movement of the train as he was alighting therefrom, it will not be held contributory negligence, as a question of law, that he, a man 69 years of age, let himself go to the ground gradually and slowly, on the side opposite to the station, where passengers customarily got off without objection from the carrier, especially as he had a right to assume that the defendant would not be negligent.

Kearney *v.* R. R.

8. **Carriers of Passengers—Alighting from Trains—Contributory Negligence—Negligence—Proximate Cause.**

The negligence of the plaintiff, a passenger on defendant's train, in alighting at the usual place at defendant's depot, will not be held contributory when the real or proximate cause of the injury complained of was the sudden and unexpected movement of the train.

9. **Same—Starting of Trains—Negligence.**

When, in alighting from defendant's train at a station, the plaintiff has negligently put himself into a position which would not have directly produced the injury, and the injury would not have occurred except for the defendant's negligent act in suddenly starting the train, the situation of the plaintiff, at the time of his injury, is a mere condition, and not the direct or contributing cause thereof.

10. **Carriers of Passengers—Riding on Platform—Stopping of Trains—Alighting—Interpretation of Statutes.**

Revisal, sec. 2628, relieving the carrier from liability for injuries to passengers, under certain conditions, while riding on the platform while the train is in motion, etc., is for the protection of passengers and should be reasonably construed, and has no application when the injury complained of has been received as the passenger was alighting at a regular station after the train had stopped for that purpose, though he may have ridden in violation of the statute before the train had stopped.

11. **Same—Instructions—Construed as Whole.**

In an action against a carrier of passengers for damages for a personal injury received by a passenger, there was evidence tending to show that the plaintiff had ridden on the platform of the car to his destination, and was injured after the train had stopped at the station while alighting in the customary manner. There was evidence *per contra.* Among other things, the judge charged the jury that the plaintiff "would be entitled to recover" if they found that the train stopped at the usual place for the purpose, and, before the plaintiff had reasonable time to alight, it moved forward and inflicted the injury. In this case *Held,* the charge, construed with the other portions, showed no reversible error.

12. **Instructions—Power of Court—Request of Counsel—Practice.**

The trial judge on his own motion, or counsel for the parties, may request the judge to instruct the jury upon general principles applicable and necessary to an understanding of the cause being tried.

KEARNEY v. R. R.

**13. Carriers of Passengers—Alighting—Moving Trains—Instructions —Negligence.**

In an action to recover damages for a personal injury received by a passenger while alighting from a passenger train at a station, alleged to have been caused by the carrier's negligence, the verdict must be constructed with reference to the trial; and a refusal to give a requested instruction that the plaintiff could not recover if he received the injury by jumping from a moving train not held for reversible error, as the judge properly charged the law arising from the evidence so that the jury could not fail to understand the principle contended for.

BROWN, J., dissenting; HOKE, J., concurring in opinion of Court.

APPEAL from *Ferguson, J.*, at October Term, 1911, of FRANK-LIN.

This is an action to recover damages for personal injuries caused by a car, on which plaintiff had been riding as a passenger, passing over his foot, making amputation necessary.

The plaintiff, a man 69 years old, was a passenger on defendant's train on the night of 26 October, 1910, from Louisburg, N. C., to Franklinton, N. C. The train consisted of six box cars and two passenger coaches. The defendant operates a branch line between Louisburg and Franklinton, and in getting into the station at the latter point the trains pass through a switch north of the passenger depot. On the night of this accident the engine stopped at this switch to have it changed, in order to permit the train to pass onto a side-track and up to the passenger depot. When the engine stopped at this point, which was 386 feet from the depot, the passenger coach on which plaintiff was riding was seven car lengths further from the depot, making a total distance of more than 700 feet. At this point the plaintiff went on the platform of the car. In describing the circumstances under which he went out on the platform, the plaintiff says: "At any rate, just before Mr. White had gotten on, or about the time he got on the steps—had stepped down there—was when I came out of the coach, and the train had kind of slowed a little and there was a slack between the cars (lost motion) by the connection being a foot, probably, on the box cars especially. There is a foot difference, probably—a foot play between two box cars. There is not so much difference between the coaches; that is, the box cars in front. Those box cars were in front of

me. It being dark there, and I couldn't see, there was a jerk, and I caught hold of the iron rod and sat down, like this, with my feet down here, and when I sat there I looked to see, and the only thing was Professor White right across on the steps."

"I sat down on the platform of the coach with my feet on the first step. I think there are about four steps, counting the top one, down to the bottom one of the steps to get off. When that jerk came I had hold of this iron, and sat right down on the end of the coach, not on the seat."

The plaintiff remained in this position, sitting on the platform and steps of the car, until the train reached the usual place for slowing down the train, for the purpose of permitting passengers to alight when the train reached a point opposite the passenger station, and according to his evidence it then stopped.

The passenger station is on the southeast side of the track at Franklinton, and a light is kept burning in front of the station. Plaintiff says there was a light at the station where it stops regularly, on the east side, and the evidence of all the witnesses familiar with the depot is to the same effect.

It is agreed that plaintiff was attempting to alight on the side of the train opposite the passenger station.

There was evidence on the part of the plaintiff that passengers were in the habit of alighting on the side opposite the passenger station, without objection by the defendant, and that two passengers got off on that side to one on the other, and that it was equally safe, except it was a few inches lower and there was no light on that side.

There was also evidence on the part of the plaintiff that the train stopped at the usual stopping place for passengers to alight, and that he was then sitting on the top step of the platform; that after the train stopped, holding to the iron rail with one hand, he slid off until his feet were on the ground, and as he was straightening up there was a sudden jerk of the train; that he was stricken in the back, knocked down, and dragged eight or ten feet, when the train stopped again.

Other passengers were on the platform with the plaintiff, and got off about the same time, and on the same side.

The defendant offered evidence tending to prove that the usual and proper place for passengers to alight was on the side next to the passenger depot; that the plaintiff was injured on the platform, or while trying to alight while the train was in motion.

The plaintiff also offered evidence that the step on which passengers alighted was left on the platform, and that no employee of the defendant was present to assist or notify passengers.

There was a verdict in favor of the plaintiff, and from a judgment rendered thereon the defendant appealed.

*Bickett, White & Malone for plaintiff.*
*Murray Allen and F. S. Spruill for defendant.*

ALLEN, J. At the conclusion of the evidence the defendant moved for judgment of nonsuit, upon three grounds:

(1) That there was no evidence of negligence on the part of the defendant, causing injury to the plaintiff.

(2) That the plaintiff was guilty of contributory negligence, on his own evidence.

(3) That the plaintiff was injured while riding on the platform of the train, in violation of section 2628 of the Revisal.

In the determination of this motion, we must accept the evidence of the plaintiff as true, and, guided by the rule of the "prudent man," which is the standard, must consider not only the evidence of the witnesses, but also the situation of the parties and the circumstances surrounding them.

The plaintiff was a passenger on a train carrying passengers and freight, and as such assumed the *usual* risks incident to traveling on such trains, *when managed by prudent and careful men in a careful manner* (*Marable v. R. R.*, 142 N. C., 563; *Usury v. Watkins*, 152 N. C., 760); but he was entitled to the highest degree of care of which such trains are susceptible, and had the right to assume that the employees of the defendant would perform their duties and that the train would be operated with care. *Suttle v. R. R.*, 150 N. C., 673. The train had reached Franklinton, which was a terminus of the line, and had stopped at the usual place for passengers to leave the train. This

KEARNEY v. R. R.

was evidence of an invitation to alight. *Nance v. R. R.,* 94
N. C., 619; *Denny v. R. R.,* 132 N. C., 340; *R. R. v. Cousler,*
97 Ala., 235; *Roub v. R. R.,* 103 Cal., 473; Fetter on Carriers,
sec. 58.

When the train reached its destination, it was the duty of the
defendant to exercise the highest degree of care practicable, and
to give the plaintiff sufficient time and opportunity to leave the
train, and if it failed to do so, and there was a sudden start of
the train as he was alighting, this would be negligence. Hutch-
inson on Carriers, sec. 1118; *Smith v. R. R.,* 147 N. C., 450.

If passengers could leave the train on either side, and one side
was more dangerous than the other, it was the duty of the de-
fendant to have some employee present to advise the passengers.
*Ruffin v. R. R.,* 142 N. C., 128.

It was also the duty of the plaintiff to leave the train with
reasonable promptness, and to exercise the care of a person of
ordinary prudence in doing so, and if he failed in this duty he
was negligent.

These are the duties imposed by law upon the plaintiff and
defendant respectively, and when considered in connection with
the evidence of the plaintiff, viewed in the light most favorable
to him, as it is our duty to do in passing on a motion to nonsuit,
we are of opinion that there was evidence of negligence on the
part of the defendant, and that the plaintiff could not be de-
clared guilty of contributory negligence as matter of law.

According to the evidence of the plaintiff, the train had
reached its destination and had stopped at the usual place for
passengers to alight; no step for passengers was placed on either
side of the train, and no employee of the defendant was present
to advise or assist, and while he was getting off the train with
reasonable promptness there was a sudden movement of the
train, which injured him.

This is undoubtedly evidence of negligence. Moore on Car-
riers, p. 674; Hutchison on Carriers, sec. 1118; *Nance v. R. R.,*
94 N. C., 619; *Tillett v. R. R.,* 118 N. C., 1031; *Smith v. R. R.,*
147 N. C., 450.

When the train stopped, the plaintiff was sitting on the plat-
form, and he immediately attempted to get off on the side oppo-

site the passenger station.  He had been a frequent passenger on the train and usually got off on this side, as did a majority of the passengers, and without any objection from the defendant.  He did not rise to his feet, but held on to the iron railing and slided off, and after his feet reached the ground and he was getting in an erect position, or, as he says, straightening up, the sudden movement of the train injured him.

We are not prepared to hold, as matter of law, that it is negligence for a passenger, 69 years of age, when alighting from a train in the night, to let himself to the ground gradually and slowly, and particularly so in view of the fact that he had the right to assume that the defendant would not be negligent, and that the train would not move before he was given a reasonable time to get off; nor can we say it was negligent to get off on the side he did, when it was in evidence that he had done so repeatedly, without objection by the defendant, and that passengers usually got off on that side.

His Honor gave to the defendant all it was entitled to on the question of contributory negligence when he instructed the jury, in substance, that the plaintiff was negligent if he failed to exercise the care of one of ordinary prudence similarly situated.

If, however, it should be held that there is evidence of negligence on the part of the plaintiff, this would not prevent a recovery unless it was contributory, and it could not be contributory unless a real proximate cause of the injury, and according to the evidence of the plaintiff, if believed, the real cause was the negligent act of the defendant in moving its train while the plaintiff was alighting.

The principle is applied by *Justice Brown* in *Darden v. R. R.*, 144 N. C., 1, to one attempting to alight from a train in motion, which was stronger evidence of contributory negligence than is shown by the plaintiff's evidence, and he there says:  "It is useless to discuss the alleged negligence of the plaintiff in attempting to alight from a moving train, for if his evidence is to be believed, the proximate cause of his injury in being thrown to the ground was the premature signaling to the engineer by the brakeman to 'Go ahead.'  Had it not been for the brakeman's negligence, the plaintiff would doubtless have stepped safely to the ground."

The situation of the plaintiff at the time of his injury, if his evidence is believed, was not a cause, but a mere condition, and the distinction between the two is well recognized.   In *Black v. R. R.*, 193 Mass., 450, the Court, speaking of this distinction, says; "Negligence of a plaintiff at the time of an injury caused by the negligence of another is no bar to his recovery from the other, unless it was a direct, contributing cause to the injury, as distinguished from a mere condition, in the absence of which the injury would not have occurred. . . .   The application of this rule sometimes gives rise to difficult questions.   But in this connection the doctrine has been established that, when the plaintiff's negligence or wrongdoing has placed his person or property in a dangerous situation which is beyond his immediate control, and the defendant, having full knowledge of the dangerous situation, and full opportunity, by the exercise of reasonable care, to avoid any injury, nevertheless causes an injury, he is liable for the injury.   This is because the plaintiff's former negligence is only remotely connected with the accident, while the defendant's conduct is the sole, direct, and proximate cause of it."

Nor do we think the fact that the plaintiff was on the platform immediately before his injury bars a recovery under section 2628 of the Revisal, which reads as follows: "In case any passenger on any railroad shall be injured while on the platform of a car, or on any baggage, wood, or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside the passenger cars then in the train, such company shall not be liable for the injury: *Provided,* said company at the time furnish room inside its passenger cars sufficient for the proper accommodation of its passengers."

The case does not come within the letter or spirit of the statute, because the plaintiff was not injured "while on the platform," nor was he at the time of his injury violating the printed regulations of the defendant which prohibit passengers from going on the platform only when the car is in motion.

The statute was intended for the protection of passengers and railroads, and should be reasonably construed, and there is as much reason for saying that a passenger who remains in his

seat until the train stops, and is injured as he is stepping from
the train, is injured "while on the platform," as there is for that
construction to be placed on the plaintiff's version of his con-
duct.

As was said in *Shaw v. R. R.,* 143 N. C., 315, and affirmed
in *Smith v. R. R.,* 147 N. C., 451: "The statute, in plain terms,
relieves the company from liability in the case of a passenger
injured while on the platform of a moving train, when the com-
pany, as in this case, has complied with its terms," and as the
train was not in motion at the time of his injury, the statute
has no application under the circumstances in this case.

Nor did the fact that the plaintiff had been on the platform
have anything to do with his injury. If he had lost his rights
as a passenger because violating the statute, the train, according
to his evidence, had stopped, and he then had the right to get
off, and if in doing so he was injured by the negligence of the
defendant, his being on the platform prior to that time was not
even a contributing cause.

The language used by the Court in *Wood v. R. R.,* 49 Mich.,
372, is in point: "It is claimed that it was negligent on the part
of the plaintiff in going onto and standing upon the car plat-
form and steps while the car was in motion. This may be true
and might have prevented a recovery had the plaintiff been in-
jured while standing there before the train stopped. Such, how-
ever, was not the fact, and his standing there neither caused nor
contributed to the injury, other than by enabling the plaintiff to
step off the train immediately upon its coming to a stop. Upon
the stopping of the train he had then a right to get off, whatever
his position up to that time may have been, and the danger of
his position up to then cannot be charged against him, if he
then, in the usual and customary manner and place, attempted
to get off."

His Honor charged the jury on this phase of the case as fol-
lows: "My attention has been called to a statute passed by the
Legislature, which I will read to you: 'In case any passenger
on any railroad shall be injured while on the platform of a car,
or any baggage, wood, or freight car, in violation of printed
regulations of the company, posted at the time in a conspicuous

place inside its passenger cars then in the train, such company shall not be liable for the injury: *Provided,* said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of its passengers.' It is admitted, gentlemen, that the notices which have been introduced, one placed on the outside of the passenger coach which reads, 'Passengers not allowed to stand on the platform,' and notices posted inside the coach, 'Passengers are prohibited from going on platforms or between cars while the train is in motion, and are warned not to allow their heads or limbs to project from car windows.' The defendant company cannot make a contract which would excuse it from responsibility for its own negligence; neither could it make rules or regulations for the movement and control of its trains which would excuse it from its own negligence; but the Legislature has seen proper to pass a law which prohibits a passenger from recovering if he stands on the platform, if he is injured while on the platform, contrary to notices which are posted. So that, if you should find from the evidence that the plaintiff went out and stood upon the platform, or sat down on the platform with his feet on the steps, while the train was in motion; and while it was in motion, he having placed himself there in violation of a notice, he is prohibited by the statute from recovering, if he received injury while on the platform. And that means, not simply if he might get his hand mashed by the cars coming together, but if he placed himself there so that he was thrown from that place to the ground by the ordinary movement of the cars, he would be prohibited from recovering by reason of the notice, and it would be your duty to answer the second issue 'Yes,' whatever you might find as to the first; for, although the defendant might have been negligent in not moving its train with proper skill and proper care, still, under the law and the posted notices, its engineer could not anticipate that a passenger could be standing on the platform, and if he were standing or sitting there and the train in motion, and were thrown out, he could not recover. But although you might find that he went out and sat down on the platform while the train was in motion, and he remained there without injury until the train stopped, if you find it did

stop, and when it stopped at the usual place of stopping the
train for passengers to alight from the train, while it was sta-
tionary, and before he had reasonable time to alight, the train
moved forward, and by its motion in going forward struck him
and knocked him down and ran over his foot and injured him,
he would be entitled to recover."

The latter part of this instruction is the subject of exception
by the defendant, because it concludes with the words, "would
be entitled to recover," and this exception finds support in what
is said in *Miller v. R. R.,* 143 N. C., 115, but this language does
not stand alone, and must be considered with reference to the
other parts of the charge, and when so considered it will be
found that his Honor gave specific directions as to how the issues
should be answered by the jury, according to their findings on
the different contentions of the parties.

It was not intended to be decided in the *Miller case,* nor do
we think it has been so decided in any other, that counsel may
not ask the judge presiding to instruct the jury upon general
principles applicable and necessary to an understanding of the
case, nor that the judge cannot do so of his own motion.

The defendant also excepts because, as it contends, his Honor
refused to instruct the jury to answer the first issue "No," if
they found the plaintiff was injured while attempting to jump
from a moving train.

As was said in *Cox v. R. R.,* 149 N. C., 87: "The verdict,
like the charge, must be construed with reference to the trial."

His Honor instructed the jury that they could not answer the
first issue "Yes" unless they found that the plaintiff was injured
while getting off the train after it stopped, and then presented
the defendant's contention that the train was in motion at the
time of the injury. He said: "If you find from the evidence
that the train was being properly conducted and in motion, and
shall further find that while it was in motion the plaintiff placed
himself on the steps of the platform, and while the train was in
motion the plaintiff, from his position in which he had placed
himself, either fell from his position or attempted to alight from
the train while it was in motion, and fell or was knocked down
by the cars, the defendant would not be guilty of negligence, and

it would be your duty to answer the first issue 'No.' One who rides on a mixed train—that is, a train made up partly of freight cars with coaches attached—must take notice of the mode of moving such trains, and give a due regard thereto; and if you shall find from the evidence that the engineer slowed down his train and did not stop his engine, and thereby stop the movement of the passenger coaches, but moved slowly, and when he stopped his engine the passenger coach on which the plaintiff moved stopped at the time he stopped his engine, and afterwards and while plaintiff was attempting to alight, the passenger coach moved forward on account of the freight cars in front and between the passenger coach and the engine, taking up slack, it would not be negligence of the defendant, and you would answer the first issue 'No.' Contributory negligence is where the negligence is a contributing cause to the negligence already in motion, or put in motion during the existence of the contributing act of negligence; and if by the joint negligence of the two the injury is caused, each in part being the cause of the injury—to illustrate: if the defendant was negligent and the defendant's negligence was the proximate cause of the injury to the plaintiff, and the plaintiff was negligent and his negligence contributed to the injury, it would be a case of negligence on the part of the defendant and contributory negligence on the part of the plaintiff. If you shall find from the evidence, by its greater weight, that the plaintiff attempted to alight from a moving train, it would be a case of negligence on his part, because it was the duty of the defendant to stop its train at the station, and a reasonably prudent man, careful of himself to avoid injury, would observe that the motion of the train, stepping from that to the ground, which was stationary, was calculated to throw him—cause him to fall and get hurt; and should you so find from the evidence, it would be your duty to say that he was contributing to the act of the defendant, if you find the defendant was negligent."

We do not think the jury could fail to understand from this charge that the issues should be answered against the plaintiff if he was injured in attempting to jump from the train or while it was in motion. Indeed, his Honor, we think inadvertently,

went too far in behalf of the defendant, when he substantially told the jury to answer the second issue "Yes" if they found the plaintiff was careless.

The defendant further excepted to the following charge: "I charge you that if you shall find from the evidence, by its greater weight, that the train was slowed down on approaching the depot at Franklinton, at the usual place of slowing down the train, and shall further find from the evidence that the train came to a stop before the plaintiff attempted to alight from the train, and that just as the plaintiff was in the act of alighting and before he had a reasonable time to alight, and before the passengers who were to alight at the station had a reasonable time to alight, the defendant's engineer suddenly, without notice, moved the train forward, which motion of the train caused the plaintiff to fall, or struck him and knocked him down, and the train ran over his foot and injured him, it is your duty to answer the first issue 'Yes,' although the plaintiff was getting off on the opposite side of the train from the station, and on the side that passengers were not accustomed to alight."

This instruction presents the question of proximate cause, and is equivalent to charging the jury that although the plaintiff was negligent in getting off on the wrong side of the train, and in the manner adopted by him, that if the train had stopped at the usual place, and he was attempting to alight and was injured by a sudden movement of the train, a reasonable time not being given to leave the train, that the sudden movement of the train was the proximate cause of the injury, which is in accordance with authority. *Darden v. R. R.,* 144 N. C., 3; *Smith v. R. R.,* 147 N. C., 451.

The following excerpt from Moore on Carriers, sec. 38, is quoted and approved in *Smith v. R. R., supra:* "The duty resting upon a carrier involves the obligation to deliver its passenger safely at his desired destination, and that involves the duty of observing whether he has actually alighted before the car is started again. If the conductor fails to attend to this duty and does not give the passenger time enough to get off before the car starts, it is necessarily this neglect of duty which is the primary and proximate cause of the accident, if injury be

occasioned thereby to the passenger. It is not a duty due a person solely because he is in danger of being hurt, but it is a duty owed to a person whom the carrier had undertaken to deliver and who was entitled to be delivered safely by being allowed to alight without danger."

We have discussed the principal questions raised by the exceptions, and those mainly relied on on the oral argument and in the briefs, and have also considered the other exceptions not referred to, and upon the whole record find no error which entitles the defendant to a reversal of the judgment.

There are thirteen exceptions to evidence, which are not discussed in the brief, because counsel were doubtless of opinion, as we are, that they were without merit.

No error.

BROWN, J., dissenting: The plaintiff, a man 69 years old, who had been Sheriff of Franklin County more than thirty years, was a passenger on defendant's train on the night of 26 October, 1910, from Louisburg, N. C., to Franklinton, N. C., consisting of six box cars and two passenger coaches. The defendant operates a branch line between Louisburg and Franklinton, and in getting into the station at the latter point the trains passed through a switch north of the passenger depot.

On the night of this accident the engine stopped at this switch to have it changed, in order to permit the train to pass onto a side-track and up to the passenger depot. When the engine stopped at this point, which was 386 feet from the depot, the passenger coach on which the plaintiff was riding was seven car lengths further from the depot, making a total distance of more than 700 feet. At this point the plaintiff went on the platform of the car. In describing the circumstances under which he went out on the platform, the plaintiff says: "At any rate, just before Mr. White had gotten on, or about the time he got on the steps—had stepped down there—was when I came out of the coach, and the train had kind of slowed a little and there was a slack between the cars—lost motion—by the connection being probably a foot, on the box cars especially. There is a foot difference, probably—a foot play between two box cars. There is

not so much difference between the coaches, that is, the box cars in front. Those box cars were in front of me. It being dark there, and I couldn't see, there was a jerk and I caught hold of the iron rod and sat down, like this, with my feet down here, and when I sat there I looked to see, and the only thing was Professor White right across on the steps.

"Q. You sat down on what? A. On the platform of the coach, with my feet on the first step. I think there is about four steps, counting the top one, down to the bottom one of the steps to get off. When that jerk came I had hold of this iron, and sat right down on the end of the coach, not on the seat."

"Q. Sat down on what? A. On the platform of the coach, with my feet on the first step. I think there is about four steps, counting the top one, down to the bottom one of the steps to get off. When that jerk came I had hold of this iron, and sat right down on the end of the coach, not on the seat."

The plaintiff remained in this position, sitting on the platform and steps of the car, until the train reached a point which, according to his testimony, was the usual place for slowing down the train for the purpose of permitting passengers to alight when the train reached a point opposite the passenger station.

The passenger station is on the southeast side of the track at Franklinton, and a light is kept burning in front of the station to enable passengers to alight in safety. Plaintiff says there was a light at the station where it stops regularly, on the east side, and the evidence of all the witnesses familiar with the depot is to the same effect.

It is agreed that plaintiff was attempting to alight on the side of the train opposite the passenger station.

The proper place for passengers to alight at Franklinton, and the place provided by the defendant for that purpose, is on the side of the train on which the passenger station is located. There is a light on that side, and the conductor goes on that side of the train to permit passengers to alight, and puts his box down there for that purpose.

On the night of this accident the conductor had gone to the telegraph office for orders in connection with his train, and was in the act of passing around the rear of his train to get to the

passenger depot to put down his box on the east side, when his attention was called to Sheriff Kearney who had fallen on the west side of the train.

"It was dark," Sheriff Kearney says, and "couldn't see to get off, because I had fallen twice there by reason of the distance being greater. They usually put down a step for passengers to get off the cars. There was no step put there that night."

With these conditions existing on the west side of the train, the plaintiff described the manner in which he was hurt as follows:

"The car had stopped. . . . The coach had stopped—the coach that I was on—and the one in the rear. I don't know about the box cars, or whether the engine had just stopped, or how it was. . . . I didn't raise up on the platform. With my feet on that first step there, and sitting here I just kind of slid down; did it because it was dark there, except right between the coaches, but the distance was more than a step. The distance from the bottom step of the coach down to the ground, I can't tell exactly, but I suppose it must be some fifteen inches, though. At any rate, it is a little more, probably, on that side than it is on the other—not more than that (indicating a distance with his hands), but the step when it is put down makes it about equal between the ground and the first step of the car. And when my foot got on the ground I had hold of the rod with one hand—which one I won't be positive; I can't remember for my life. I know I had my grip in my hand, and I raised up, and when I raised up I did not quite straighten, and I know then I turned my left hand, with my face to the left, to catch hold of the iron to get up straight. I lacked a little bit of getting up straight, and couldn't recover it. If I could have gotten hold of the iron I might have done it. I saw that I would sit back, and just at that time the coach in front of me moved, and the one in the rear, I think. Now, I won't be positive about it—which part of the coach that struck me right under the shoulder blade."

The following testimony of Sheriff Kearney is also descriptive of the manner in which he alighted:

Q. This was at night? A. Yes, sir.

Q. And a dark night? A. It was, that night.

Q. There was a light burning on the passenger side of that train? A. I reckon there was; I didn't see it. I said they usually had that light, but I didn't notice it.

Q. You didn't look for the light—you stepped off on the opposite side of the train? A. I stepped off on the right-hand side.

Q. You stepped off on the opposite side from the passenger depot? A. Yes, sir.

Q. And it was dark where you stepped off? A. No; it was not dark right in front of me, because I could see the ground, and so stated. I said when the train stopped I could see the light underneath it.

Q. But you sat down on the platform and slid down to your feet on the side opposite from the passenger depot? A. Yes, sir; that is right.

Q. Did you get off, looking back towards Louisburg? A. No; I turned and then slid off, when I heard that the train had stopped.

Q. Slid off, right down the steps? A. No; I don't think I did; don't think I raised up at all; that is my recollection of it.

The plaintiff says that this was a mixed train and he was using all the caution he could, because he could not see well at night.

Q. You know how box cars, with slack, how they come together that way? A. Yes, sir; I have seen it many times.

And the plaintiff further explains that his knowledge of the jerking of a mixed train is what caused him to sit down when the train first stopped at the lower switch. (Record, p. 31.)

As further explaining the manner in which he fell, plaintiff was asked:

Q. Now, you say the car came to a stop after you sat down, and you slid down. Did you catch on your feet? A. Yes, sir; my feet went on the ground.

Q. You don't remember which hand you had your bag in? A. I think I had hold of the railing with my left hand.

Q. Tell me which direction the jerk was? A. As I got down and my feet went on the ground, I necessarily had to turn the way I was going, and when my feet got down and I raised up

this way to get up, having hold of this iron, I did not take leverage enough to carry my body straight up, and caught a new hold there with my left hand, or with the other hand. That is the time the jerk came and I dragged.

Q. Was that the impact of the cars as they came together that way? A. Yes, sir; I think that is what struck me. It was two weeks after it was done before I knew the bruise was on my back.

Q. The slack in the train caused that car behind you—the railing or the end of the bumper, or something—to hit you in the back? A. Yes, sir.

Q. Now, you were sitting on the top of the platform, with your feet on the first step, and then below there are two steps more? A. I think so.

Q. And you straightened your feet and slid down? A. My feet got to the ground.

Q. You were still in a sitting posture? A. Yes, sir. I let my feet get on the ground until they struck the ground, and brought a swing to get up straight, and lacked a little bit of getting up and down, and saw I was going back on the car, and that was the time the bump came.

Q. You were still sitting on one of the steps? A. I can't say I was sitting.

Q. So, when you went to swing up and down, you didn't get the impetus to go forward—your weight was on the step, and you didn't get the impetus to pull up? A. That is right, and before I could recover, this jerk came.

It is not denied that defendant's train was being handled by a competent engineer and conductor. Sheriff Kearney says Engineer Sine and Conductor Finlator are competent men. Nor is it disputed that the cars were properly equipped with air-brakes.

There was sufficient room in the car for plaintiff to sit down, and he admits that he knew it was against the defendant's rules to ride on the platform.

It is also admitted by the plaintiff that the defendant had posted in its cars the following notices:

"Passengers are prohibited from going on the platforms or between cars while the train is in motion, and are warned not to allow their heads or limbs to project from car windows."

And it is admitted that there were plates on the doors which read:

"Passengers not allowed to stand on the platform."

The defendant offered the evidence of its train crew and other witnesses to show that the train was moving when plaintiff fell from the car and was injured, and an eye-witness testified that he was within eight feet of the train and saw the plaintiff fall while the train was moving.

1. I think the motion of nonsuit should have been granted upon the ground, first, that there is no evidence of negligence on the part of the defendant causing injury to the plaintiff. There can be no dispute as to the law as laid down in our decisions, that a passenger on a mixed train assumes the usual risks incident to traveling on such trains when managed by prudent and careful men and in a careful manner. *Marable v. R. R.,* 142 N. C., 563; *Usury v. Watkins,* 152 N. C., 760. This rule does not change the burden of proof. The burden is upon the plaintiff to satisfy the jury by a preponderance of the evidence that the injury did not result from one of the usual risks incident to traveling on such trains. The plaintiff must show negligence. It would not be presumed from the mere fact that a mixed train moved after having momentarily stopped at a station. The plaintiff must show by a preponderance of the evidence that the movement of the train was due to the failure of the defendant to exercise care in the operation of the train.

There is not only an absence of evidence in the record that the movement of the train was such as is not ordinarily incident to the movement of a mixed train, but the plaintiff's positive testimony is to the effect that the movement of the car which knocked him down was the result of the box cars in the train taking up slack. The plaintiff testified that he was familiar with the manner in which box cars take up slack when a train stops. He said there is probably "a foot play between two box cars." The following evidence shows the cause of the movement of the cars:

Q. Was that the impact of the cars as they came together that way?  A. Yes, sir; I think that is what struck me.

Q. The slack in the train caused that car behind you—the railing or the end of the bumper or something—to hit you in the back?  A. Yes, sir.

2. I think the motion of nonsuit should have been granted upon the further ground .that upon plaintiff's own evidence he was guilty of contributory negligence which was the proximate cause of his injury.  The law requires a passenger in alighting from a train to exercise reasonable care for his safety in taking hold of railings and in stepping off in the proper direction and manner, and if his injury results from his failure to exercise such care, he is charged with contributory negligence.  The evidence of the plaintiff in itself and without argument seems to me to establish conclusively that he failed to exercise the care of a prudent man in alighting from this mixed train.  He knew the place was dangerous.  He says he had fallen twice there by reason of the distance being greater on that side.  He did not step from the train as is customary and prudent, but slid down the steps.  It does not meet this to say that he slid off the steps because of the darkness.  He selected the dark side knowing the conditions.  It is no answer to say that the defendant should have notified him to get off on the depot side.  He required no notice.  As long as the railroad had been running Sheriff Kearney had been riding on this train and he knew the place to alight was on the depot side.  The Court lays stress upon the fact that the box used for passengers to alight was not put down and no one was present to notify passengers.  While there was evidence for the plaintiff that this box or step was left on the platform and no employee of the defendant was present to assist or notify passengers, there was also evidence from the plaintiff and his witnesses, which is not disputed, that this step would not have been placed on the side on which plaintiff attempted to alight.  There was no duty on the defendant to notify the plaintiff as to the proper place to alight.  He admits that he knew all about the locality; that he knew the location of the depot and the light; that he knew the difference in the distance from the bottom step to the ground on the two sides of the train.

Was the defendant required to notify a passenger that the proper place to alight was on the side of the train next to the depot where the light is kept burning for the purpose of enabling passengers to alight in safety? Was the defendant required to notify a passenger of the danger of alighting on the dark side of the train, when the passenger admits frankly that, "It was dark and I couldn't see to get off, because I had fallen twice there before by reason of the distance being greater"? This admission is in itself sufficient to eliminate all question of the defendant's duty to notify plaintiff of the conditions existing at the Franklinton station. Experience had given him a lasting notice.

It is said in the opinion of the Court that the fact that plaintiff was riding on the platform in violation of the rules of the defendant and the notices posted in the cars had nothing to do with his injury. The case relied upon is *Wood v. R. R.,* 49 Mich., 372. In my opinion, this case is so far different from the facts in our case as to make it inapplicable as an authority. I think the present case falls within the exception noted in *Wood v. R. R.,* in the following language: "Had the plaintiff been in an improper position when the cars stopped and because thereof attempted or been obliged to resort to unusual methods to alight, and been injured while so doing, the case would be different, as the second wrongful act would contribute directly to the injury." The decision in that case turned entirely upon the fact that the plaintiff was alighting in the *usual and customary manner and place.* Sheriff Kearney's violation of the posted notices and the rules of the company was a cause in the absence of which the accident would not have occurred, and he is denied the right to recover by section 2628 of the Revisal. *Wagner v. R. R.,* 147 N. C., 315.

3. If this case was properly submitted to the jury, as is held by the majority of the Court, I am convinced that the defendant was seriously prejudiced in the trial by the charge of the court and by the refusal to give the defendant's requests for special instructions. One of the principal exceptions to the charge is contained in the following instruction:

KEARNEY *v.* R. R.

"But although you might find that he went out and sat down on the platform while the train was in motion, and he remained there, without any injury, until the train stopped, if you find it did stop, and when it stopped at the usual place of stopping the train for passengers to alight, he then being in the position on the platform, attempted to alight from the train while it was stationary, and before he had reasonable time to alight, the train moved forward, and by its motion in going forward struck him and knocked him down and ran over his foot and injured him, he would be entitled to recover."

While the defendant objects to the form of this instruction, and its form has been repeatedly held to be erroneous (*Ruffin v. R. R.,* 142 N. C., 120; *Witsell v. R. R.,* 120 N. C., 557; *Bottoms v. R. R.,* 109 N. C., 72), the defendant also attacks the instruction for error in its substance, and I think the point is well taken and finds direct support in the opinion of *Mr. Justice Walker* in *Miller v. R. R.,* 143' N. C., 123. In the *Miller case* it was held to be error to instruct the jury, "If you find as a fact from the evidence that, at the time he got on the caboose, it was not hitched on and connected, coupled with the engine, he was on the car wrongfully, and he cannot recover in this action." In discussing the reason for holding this instruction to be erroneous, *Mr. Justice Walker* says: "The liability of the defendant did not exclusively depend upon whether the caboose, when the plaintiff got on it, was coupled to the engine. If it was not, there were other facts and other questions to be considered, both in regard to defendant's negligence and plaintiff's contributory negligence.".

The objection to the form of the question given in the present case is noted in the Court's opinion, but no reference is made to the objection to the substance, which was the objection insisted upon by the defendant. I am of opinion, as argued by the defendant, that the instruction had the effect of telling the jury that if they believed certain parts of the plaintiff's testimony *he would be entitled to recover,* without regard to the other evidence. The instruction contains a statement of the law governing this case that is in conflict with every decision of this Court on the subject of a carrier's liability for injury to passengers

traveling on a mixed train. It contains the statement that the plaintiff would be entitled to recover *if the train moved forward.* No reference is made to the requirement that the movement must have been negligent and that it would not be negligent if it was due to the cars "taking up slack," as testified to by the plaintiff and which is one of the usual incidents to the operation of a mixed train. This instruction eliminates the plaintiff's conduct in alighting from the train on the side opposite the station, in the dark, at a point at which he had fallen twice before and when he knew the probability that the cars would take up slack, and it eliminates his conduct in alighting from the train at a place where the distance to the ground was six inches greater than on the side towards the depot, and by sitting on the platform in violation of the rules of the company, which he knew, and the notices posted in the cars in compliance with the statute, and by sliding down the steps in a sitting posture holding to an iron rail with his left hand. The instruction eliminates the fact, as shown by the defendant, that passengers invariably get off on the east side of the train because provision is made for them on that side, and it deprives the jury of the right to consider whether the plaintiff would have been knocked down by the movement of the train if he had been alighting from the train at the proper place and in the proper manner, and, in violation of the very fundamental principle of all actionable negligence, it omits all reference to proximate cause. The baneful effect of this charge could not be cured by general instructions on the issues, and I think the defendant is entitled to a new trial.

The charge does not contain a definition of proximate cause, and his Honor repeatedly charged the jury and omitted all reference to that material element of actionable negligence. Because of this omission, the following instruction is, in my opinion, erroneous: "I charge you that if you shall find from the evidence, by its greater weight, that the train was slowed down on approaching the depot at Franklinton, at the usual place of slowing down the train, and shall further find from the evidence that the train came to a stop before the plaintiff attempted to alight from the train, and that just as the plaintiff

was in the act of alighting, and before he had a reasonable time to alight, and before the passengers who were to alight at the station had a reasonable time to alight, the defendant's engineer suddenly, without notice, moved the train forward, which motion of the train caused the plaintiff to fall, or struck him and knocked him down, and the train ran over his foot and injured him, it is your duty to answer the first issue "Yes," although the plaintiff was getting off on the opposite side of the train from the station and on the side that passengers were not accustomed to alight."

In sustaining this charge the majority of the Court find it necessary to hold that proximate cause upon the facts of this case is a question of law. This can only be done by holding that there is no evidence of contributory negligence on the part of the plaintiff. In considering this instruction the defendant is entitled to the strongest evidence in the record tending to show contributory negligence, whether offered by the plaintiff or the defendant, because the jury was at liberty to accept the defendant's evidence as true. There was evidence to the effect that it was very dark on the side of the train on which plaintiff alighted; that it was not the proper place to alight, and that passengers invariably alighted on the opposite side; that the plaintiff knew of danger in alighting; that the difference in the distance to the ground on the two sides is six inches by actual measurement; that the plaintiff knew there was a foot slack between the box cars and that this would cause the train to move forward after the engine had stopped; that immediately upon the train stopping, and without waiting to see if the stop was final, the plaintiff attempted to alight; that he was sitting upon the platform in violation of the rules of the company and printed notices, and without arising he slid in a sitting posture down the steps, holding to the iron rod only with his left hand, and that on account of his failure to have sufficient power, on account of his position, to get up straight, and when he was about to sit back on the steps and in an unbalanced condition due to the manner in which he was alighting, he was knocked down by the movement of the train, and there is no evidence that the movement of the train would have knocked him down

if he had been alighting in a proper manner on the side of the train provided for that purpose. Can it be that that recital of the evidence in this case contains no evidence of a failure on the part of the plaintiff to exercise the care of a prudent man? If it is conceded to contain such evidence, under the decisions of this Court the question of proximate cause was a matter for the jury, and it was necessary that they should find that defendant's negligence was the proximate cause of the injury before they could answer the first issue "Yes." The Court refuses to sustain the exception to this instruction because, as is said in the opinion, "according to the evidence of the plaintiff, if believed, the real cause was the negligent act of the defendant in moving its train while the plaintiff was alighting." Is there no evidence from which the jury could find that the plaintiff's conduct was the cause of his injury? Is proximate cause to be tested by plaintiff's evidence alone? I cannot agree with the conclusion of the majority of the Court. I have failed to find in plaintiff's evidence the statement that the defendant moved the train, but on the other hand I find the plaintiff's positive statement that the train was caused to move by the slack in the cars being taken up. I find upon examining the cases that whenever the question has been presented to this Court it has always been held that proximate cause is a question for the jury whenever the facts would admit of two conclusions. It has been held invariably that it is improper to charge that certain facts, if found to be true, would constitute contributory negligence and bar a recovery, without adding the *essential element of proximate cause.* A striking illustration will be found in *Roberts v. R. R.,* 155 N. C., 89, in which the defendant's request for an instruction that if certain facts were found to be true the plaintiff would be guilty of contributory negligence was modified by adding the element of proximate cause. The Court in an opinion by *Mr. Justice Hoke* holds that this modification was proper and that the Court could not have made the conduct of the plaintiff "determinative and controlling, and as a matter of law the proximate cause of the injury." In the recent case of *Boney v. R. R.,* 155 N. C., 95, will be found three special instructions requested by the defendant, each containing the recital of certain

facts which the defendant regarded as constituting contributory negligence, and upon the basis of the finding of such facts by the jury the defendant requested the court to charge the jury to answer the issue of contributory negligence "Yes." These instructions were given, except that the element of proximate cause was added to each, which this Court said was proper. The very theory upon which the *Boney case* was submitted to the jury was that proximate cause is a question for the jury, and that principle was invoked in denying the defendant a new trial for refusal to give certain instructions requested. In an elaborate discussion of proximate cause by *Mr. Justice Allen,* it is held that: "When it appears that plaintiff's intestate, an engineer, was killed by a collision of his passenger train with another train at a station which it was entering, the rules of the company, known to him, prescribing that under the conditions a speed over six miles an hour was prohibited and he was running thirty miles an hour, an instruction that the jury should find the intestate guilty of contributory negligence which would bar his recovery leaves out the essential point that it must approximately cause the injury, and is an improper one."

That proximate cause is a question for the jury when more than one inference can be drawn from the evidence is nowhere more vigorously maintained than by the *Chief Justice* and *Mr. Justice Hoke* in their dissenting opinions in *Kearns v. R. R.,* 139 N. C., 470, and they cite the differing views of the members of this Court as proof positive that more than one inference could be drawn from the evidence in that case. The *Chief Justice* speaks of proximate cause as "a matter of fact eminently for a jury to decide."

It was held in *Ramsbottom v. R. R.,* 138 N. C., 38, that "Where two different conclusions could be fairly drawn as to whether there was a negligent breach of duty in not stopping a train, and whether the injury was one that any man of ordinary prudence might have expected from the facts as they existed, an instruction that withdrew the decision of both of these elements of actionable negligence from the jury and submitted to them only the question whether the failure to stop the train caused the injury was erroneous."

It has been frequently held by this Court that an instruction which makes the liability of the defendant depend upon its negligence, without regard to whether such negligence was the proximate cause of the injury, is erroneous. *Butts v. R. R.,* 133 N. C., 82. And cases are almost as numerous as the leaves that fall sustaining the principle that proximate cause is for the jury when more than one conclusion can be drawn from the evidence. *Stout v. Turnpike Co.,* 153 N. C., 513; *Muse v. R. R.,* 149 N. C., 451; *Wagner v. R. R.,* 147 N. C., 325; *Boney v. R. R.,* 145 N. C., 248; *Whisenhant v. R. R.,* 137 N. C., 349; *Lassiter v. R. R.,* 133 N. C., 244; *Dunn v. R. R.,* 126 N. C., 343.

It is said in the opinion of the Court that if it should be held that there is evidence of negligence on the part of the plaintiff, this would not prevent a recovery unless it was contributory, and that it could not be contributory unless *the real proximate cause of the injury.* This is, I think, an incorrect idea of contributory negligence. It is not essential that the plaintiff's negligence should be the real proximate cause of the injury. It is sufficient if it is, as the words imply, a contributing cause. If the plaintiff's negligence is the real proximate cause of the injury in the sense of sole proximate cause, the act of the defendant would not be the real proximate cause, and, therefore, would not be actionable. The injury would then be the result of plaintiff's own negligence and not his contributory negligence. It cannot be said as a matter of law that the movement of the train was the real proximate cause when it does not appear that plaintiff would have been injured if he had been alighting in a proper manner. Plaintiff's own testimony shows that he was in an unbalanced position due to his own conduct. Could not the jury say that such position contributed to cause the fall, and that he would not have fallen if he had exercised the care of a prudent man? The true rule, as laid down by Beach on Contributory Negligence, secs. 34, 35, is that if the negligence of the plaintiff contributed in any degree to cause or occasion the accident, there can be no recovery. Mr. Beach says: "However it may have been expressed, the principle underlying all these decisions seems to be, and verily it is, the only sound basis upon which they can rest, that whenever the plaintiff's case shows

any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, as a proximate cause of the injury for which he brings his action, his right to recover is thereby destroyed. . . . There can be no middle ground; either the truth of these elementary propositions must be conceded or the whole theory of our modern law of contributory negligence must be abandoned."

I think the evidence shows conclusively that the plaintiff's conduct was the proximate cause of his injury; other members of the Court draw the conclusion that the movement of the train was the proximate cause as a matter of law. Would it not be as little as the defendant is entitled to to submit that question to the jury under proper instructions from the court?

There is no similarity in the case of *Darden v. R. R.,* 144 N. C., 1, referred to as sustaining the position of the Court that the conduct of the defendant in this case was as a matter of law the proximate cause of plaintiff's injury. In that case the plaintiff was alighting at a proper place and was *stepping* from the train in a proper manner. There was no evidence that his manner of alighting was in any way the cause of his injury. On the other hand, it appeared that when the train had almost come to a complete stop and some one had called out, "All off for Springhill," plaintiff went out on the platform and just as he was in the act of alighting, "one foot on the bottom step and the other on the ground," the brakeman threw his lantern and holloaed, "All off for Springhill," and the engineer opened his throttle and the train jerked off. It appeared that the brakeman was in position to see the plaintiff as he was alighting, and it was his duty to see that passengers had descended from the steps to the ground before signaling the engineer. It is doubtful if there was any evidence of negligence on the part of the plaintiff in that case. The negligence complained of was his attempting to alight from a moving train, and there was no evidence in the case that the speed of the train was such that it would have thrown him if the train had not been suddenly jerked while he was in the act of alighting. There was no evidence that the plaintiff's manner of alighting in any way contributed to cause his injury, and under such circumstances it was said that *the*

*proximate cause of the injury was the premature signaling to the engineer by the brakeman to "go ahead."* I do not think such facts are similar to the facts in this case, and I cannot agree with the Court in saying that that case presented "stronger evidence of contributory negligence than is shown by the plaintiff's evidence in this case." Darden was, in the most unfavorable light of the evidence, attempting to alight from a moving train after his station had been called and the usual place of alighting reached; the brakeman nearby signaled the engineer ahead while he was alighting; the engineer, in obedience to such signal, suddenly jerked the train; the brakeman knew that Darden was going to alight at that point. In this case Sheriff Kearney, without the knowledge of any of defendant's employees, immediately upon the stopping of a mixed train attempted to alight by sliding down the steps; he lost his balance as the result of the manner and place in which he alighted and saw he was going to sit back on the steps, and while in that uncertain position the train moved forward and he was injured. There is nowhere in the record a single word of evidence that supports the view that Sheriff Kearney would have been hurt if he had been in the act of alighting from the train in a proper manner. The facts alone would seem to distinguish this case from *Darden's case.*

I have examined *Smith v. R. R.*, 147 N. C., 451, and I am unable to find anything in the facts or the law of that case to sustain the position that the movement of the train was as a matter of law the proximate cause of the injury to this plaintiff. There the plaintiff was a passenger on the defendant's train bound for Mebane, N. C., and when the train reached that point it stopped at a place about fifty yards east of the usual stopping place; the plaintiff thereupon went upon the platform for the purpose of alighting and discovered that a train of box cars was on the side-track on the north side and a train with engine attached was on the south side of the car on which she arrived; that the side-tracks were close to the track on which was the car she was on; that no one of the train crew was there to assist her to alight, as she was well acquainted with the ground; that passengers are usually received and discharged on the south

side of the track where the depot is situated; that when plaintiff reached the platform the local train began to move east along where she stood on the platform; that she hesitated to attempt to alight there, and while she was standing there, not over half a minute, the train on which she was began to move slowly towards the station, and she supposed it was going to pull up to the place to alight, and instead it increased its speed, and, by jerking, threw plaintiff off and injured her. Upon these facts the plaintiff was nonsuited. In an opinion by *Mr. Justice Hoke* this Court holds that the evidence of negligence was sufficient to be submitted to the jury, and there was no testimony in the record to justify the ruling that *as a matter of law* the plaintiff was guilty of contributory negligence. The question of proximate cause was not presented and is not discussed in the opinion.

The quotation from Moore on Carriers, sec. 38, in the opinion of the Court, should be read in connection with the opening sentence of that section: "It is the duty of the servants of a carrier of passengers, especially when in charge of a railroad train, to stop it a reasonable time to allow passengers to board or alight with safety; and *in the absence of contributory negligence* on the part of the passenger, the carrier is liable for injuries resulting from a failure to perform this duty." In stating that the movement of the train is in such cases the proximate cause of the injury, the author had reference to cases in which the passenger was alighting in a proper manner and at a proper place, and in which the passenger's conduct did not tend to establish contributory negligence on his part.

The defendant requested the court to answer the issue of negligence "No," if they should find that plaintiff attempted to jump from the train as it was moving into Franklinton, or if they should find from the evidence that at the time of his injury plaintiff was attempting to alight from a moving train. These instructions contain correct statements of law and are supported by defendant's evidence. They were refused, and such refusal is conceded to be error unless the requested instructions were substantially given in the charge. The charge quoted by the Court as covering the requested instructions opens with this language: "If you find from the evidence that the train was

being properly conducted and in motion," etc. I think it clear that the defendant was entitled to the instructions as requested, without modification. If the train was in motion when plaintiff fell he would not be entitled to recover, and it would make no difference how the train was being operated by the defendant. That part of the charge quoted in the opinion of the Court, as well as other parts of the charge, show that the court below treated the question of plaintiff's alighting from a moving train as one of contributory negligence. It is not a question of contributory negligence. Whether the plaintiff exercised the care of a prudent man or not, if he was injured while the train was moving into the station at Franklinton, the jury would be required to answer the first issue "No."·

His Honor repeats the view that the defendant would not be relieved if plaintiff attempted to alight from a moving train unless the train was being properly conducted, when he charges the jury: "The defendant would not be guilty of negligence if it was moving its train in the ordinary way and without any negligence on its part in the management of its train." In place of this confusing and erroneous charge on the question of defendant's liability, if the train was moving when plaintiff was hurt, the defendant requested the simple, correct instruction: "If you find from the evidence that at the time of his injury the plaintiff was attempting to alight from a moving train, you will answer the first issue 'No,'" which was refused. In this I think there was error prejudicial to the defendant for which a new trial should be granted.

I will notice two other instructions requested by defendant, which are sustained by authority and which the defendant was entitled to have submitted to the jury: "If you find by the greater weight of the evidence, the burden being upon the plaintiff, that the plaintiff was caused to fall by a jerk of the train, the court charges you that in taking passage upon a mixed freight and passenger train a passenger assumes the usual risks incident to traveling upon such trains, when managed by prudent and competent men and in a careful and prudent manner; and unless you find by the greater weight of the evidence, the burden

KEARNEY *v.* R. R.

being upon the plaintiff, that this train was not managed by prudent and competent men in a careful and prudent manner, you will answer the first issue 'No.'"

"A passenger on a mixed freight and passenger train takes the risk of jars not caused by the negligence of the railroad company, but which are usual and consequent on such mode of transportation, and the burden is upon the plaintiff to satisfy the jury by a preponderance of evidence that the jerk of which he complains was not such as is usual and consequent upon the operation of a mixed train; and if he has failed to so satisfy you, you will answer the first issue 'No.'"

These instructions are in strict accordance with the principles announced by this Court in *Marable v. R. R.,* 142 N. C., 563; *Suttle v. R. R.,* 150 N. C., 668, and *Usury v. Watkins,* 152 N. C., 760. They were refused, and in this I think there was error. It was of the greatest importance to a correct presentation of the case from the defendant's standpoint to have the burden placed upon the plaintiff of showing by a preponderance of the evidence that this mixed train was not managed by prudent and careful men in a careful manner and that the injury of which he complained was not such as is ordinarily incident to the operation of a mixed train.

I have written at length in this case because I am convinced that the defendant was seriously prejudiced in the trial, and that the errors complained of are of such nature as to entitle the defendant to a new trial. Specific instructions were requested on all of the most important phases of the case, all of which were refused. His Honor attempted to cover some of the requests by general statements in his charge. The defendant's request on contributory negligence was particularly full and directed the jury to plaintiff's evidence. In the Court's opinion, it is said that his Honor gave the defendant all it was entitled to on the question of contributory negligence when he instructed the jury in substance that the plaintiff was negligent if he failed to exercise the care of one of ordinary prudence similarly situated. It would be impossible to conceive of a more general instruction on the subject of contributory negligence or a more abstract statement of the law. This Court has repeatedly held

that "It is the duty of a trial judge to give a requested prayer for special instruction, which is correct in itself, material to the case, and based upon certain facts reasonably assumed from the evidence; and a general and abstract charge of the law applicable to the case is not sufficient." *Baker v. R. R.*, 144 N. C., 36; *Horne v. Power Co.*, 141 N. C., 58; *S. v. Dunlap*, 65 N. C., 288; *George v. Smith*, 51 N. C., 273.

This case was closely contested and it was important to the parties to have the benefit of their special requests for instruction and that the charge of the court should be free from error. I am of opinion that neither requirement has been observed, and, if the action is a proper one to be submitted to the jury, a new trial should be ordered in order that the defendant may have its cause presented in a manner free from harmful error.

HOKE, J., concurring: I concur in the decision affirming the judgment. The court charged the jury, in effect, that plaintiff was not entitled to their verdict on the issues if he was injured in the effort to get off a moving train or by reason of going on the platform while the train was in motion, or if he was injured by reason of the slack. The verdict, then, has been rendered on the theory necessarily accepted by the jury, that plaintiff received his hurt by reason of defendant's negligence in giving the train a sudden, violent movement forward, eight or ten feet, while plaintiff was in the act of alighting from the train on which he was a passenger; that at the time of the occurrence the train had come to a full stop at the regular place at the station, and plaintiff, at the proper time, was endeavoring to alight from the train on the side where passengers or good numbers of them were accustomed to alight and where it was ordinarily safe to do so, and was taking the precaution to slide down, holding on to the usual supports, in order to avoid a possible injury by making too long a step. In this condition, when plaintiff had no reason to expect it, the train, as stated, was jerked violently forward, throwing plaintiff down and running over his foot. There was evidence to support the view. The jury have accepted it, and on this theory the question of contributory negligence and of proximate cause involved in it

FULGHUM v. R. R.

are removed as a matter of law and, on the record, the recovery should be upheld both in law and fact. *Thorp v. Traction Co.,* present term, 159 N. C.; *Darden v. R. R.,* 144 N. C., 1; *Clark v. Traction Co.,* 138 N. C., 77; *Hodges v. R. R.,* 120 N. C., 555.