CLARA J. BROWN v. ASHEVILLE POWER AND LIGHT COMPANY.

(Filed 24 May, 1916.)

1. **Railroads—Street Railways — Care of Passengers — Guard-rails — Absent Conductor—Negligence—Evidence—Questions for Jury.**

Where a street railway company runs its open car to its amusement park, the car provided with guard-rails held in place only by their own weight, and there is evidence tending to show that these rails are easily lifted by passengers entering or leaving the car, which the presence of the conductor, in looking out for the safety of his passengers, would prevent; that at a time when the car was crowded and a crowd of passengers was expected at the park, the conductor left the car to throw a switch, just before reaching the park platform, and the plaintiff, an old and feeble woman, attempting to get on the car at its regular stop, was injured by the rail, which had been held up by the passengers entering and leaving the car, falling on her head; and that a special man was occasionally employed to throw the switch, but was absent on this occasion: *Held,* evidence of actionable negligence, and it was reversible error for the trial judge to charge the jury that the car was properly equipped, and that the defendant was not liable if

the injury to the plaintiff was caused by the rail having been lifted by the other passengers, there being no fastening and no one present charged with the duty to prevent them.

### 2. Railroads—Street Railways—Stopping of Cars—Invitation Implied.

The stopping of a car at its regular place for the purpose of taking on passengers is an implied invitation for passengers to board the car there.

APPEAL by plaintiff from *Harding, J.,* at March Term, 1916, of BUN-COMBE.

*Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

CLARK, C. J.  The plaintiff, an aged lady, on a visit to her daughter in Asheville, went with said daughter and infant grandchild on the defendant's car to Riverside Park, a place of amusement conducted by the defendant.  On the return trip, as they came out from the park to the platform provided for passengers, there was a crowd of people thereon to take the car, and when the car arrived that also was crowded.

The conductor left the car a short distance from the point where passengers were received and discharged, in order to change a switch, while the car went on, without the conductor, to the usual stopping place at the platform.  There was evidence that the defendant had sometimes furnished an extra man to change the switch, so that the conductor could remain on the car to supervise and to protect passengers from injury when there was a crowd.  The car on which the plaintiff was injured was an open car provided with a guard-rail, running the length of the car on each side, which remained in position by its own weight when down and was held by hooks when raised to the top of the car for passengers to get on or off.  When the guard-rail was down, either end could be raised up without disturbing the other end.  These rails are 25 to 30 feet long, 4 inches wide, and 1 inch thick.  There were steps on each side of the car running its whole length which would be lowered when passengers were getting off or on the car, and at other times these steps were raised and fastened with an iron made for that purpose.  On this occasion the car stopped with the left side next to the platform for passengers, who began to get off and on, on both sides of the car.  The plaintiff's daughter boarded the car from the platform with her baby in her arms and took a seat, and the plaintiff was in the act of getting into the car on the same side when the guard-rail fell upon her head, causing serious injury.

The defendant's conductor testified that when he returned to the car, after operating the switch, "the guard-rail was being pushed up and down by ladies and men who were holding it up, and that passengers were

dodging in and out of the car, under it"; that the plaintiff had already been injured, and he took hold of the guard-rail and held it in position until all the passengers had gotten off, and that he then let it down into position. He further testified: "I saw that Mrs. Brown had been hurt before I let the rail down. When I saw that she was hurt, she was beside the car; she must have been within 5 or 6 feet of me. The people were still getting off the car; that was the first time that I discovered that she was hurt. I knew she was hurt because she was standing in a stooped position and had her hand to her head like she was hurt. I didn't see the guard-rail hit her; from every sign I thought she had been hit."

The conductor also testified that there was nothing to keep the guard-rail down; that anybody could push it up at will, and that if the extra man had been in charge of the switch, so that he could have remained in the car, he "would have been there to keep the rail down," and that if he had been there this would have been a part of his duties; that at that time of the year the cars were pretty well crowded, and there usually were large crowds making a rush to take the car back to town.

At the request of the defendant, the court instructed the jury that there was no evidence of any negligence on the part of the defendant in the way and manner in which the car was equipped, and that if the injury was caused by the acts of the passengers on the car, the jury should find that there was no negligence on the part of the defendant, and that if the guard-rail referred to was caused to fall and strike the plaintiff by the acts of the passengers on the car the jury should find that there was no negligence.

In this there was error. It was the duty of the conductor to be at his station at the platform where the passengers were in the habit of boarding the cars and to give necessary assistance. *Clark v. Traction Co.,* 138 N. C., 77. The carrier had reason to expect a large crowd on that occasion, and knew that a rush was usual in which the strong and alert passengers might cause injury by crowding, or in other ways, those who were feeble, and it was its duty to have the conductor supervise the station platform and premises so that they should be in a reasonably safe condition when passengers were getting off and on, *Mangum v. R. R.,* 145 N. C., 152; and if he could not be there it was a defect in equipment that the rail was not fastened so it could not be raised or lowered except by the conductor.

It is true, the court charged that the plaintiff, being an aged person, was entitled to more care and attention from the conductor than ordinary persons. *Clark v. Traction Co., supra.* But he, in effect, withdrew that instruction when he further charged that if the conductor was not on the car, and the plaintiff was injured by the act of the passengers, the defendant was not negligent. The fact that the guard-rail was up

was an invitation to plaintiff and other passengers, and the defendant was liable for injuries sustained in attempting to get on, since if the conductor had been present at his post of duty the rail would not have been up until the proper moment, and in the rush of the passengers it would not have dropped on the plaintiff.

It was the duty of the conductor to raise and lower the rail, and if he were present it would have been negligence to permit it to be raised or lowered at such time or in such way as to drop on the plaintiff. It was still greater negligence that the conductor was called away to look after changing the switch, for which the company should have (and sometimes had) provided another man. In *Arrowood v. R. R.,* 126 N. C., 629, it was held, in regard to the duty of keeping a proper lookout on the track, that if the engineer and fireman were insufficient to keep a proper lookout with due attention to their other duties, the company should have had a third man to do this; that the company were not absolved from negligence because by reason of such other duties the engineer and fireman were not able to keep a proper lookout, and that the question was not whether the engineer and fireman were negligent, but whether the company was.

In this case it was necessary that the switch should be altered, and the conductor was not negligent in attending to this duty; but it was negligence of the company in not having a man to look after the switch so that the conductor could attend to the lowering and raising of the rail at the proper time, which it was his duty to do, and to prevent the passengers from doing this in their rush to get on the car. The passengers were not charged with the duty of carefully looking after this matter. They were each rushing for a seat, and there are always some passengers more intent upon this than considerate of the possible injury to other passengers.

When the car reached the platform and had stopped at the usual place for passengers to alight, and for others to board the car, this was an invitation to the plaintiff to get aboard. *Kearney v. R. R.,* 158 N. C., 521. The defendant company knew that on such occasions there was likely to be a rush of passengers, and that there was necessity to have a conductor in charge to prevent injury to passengers by other passengers in a heedless rush for seats. It was negligence not to have a man to attend to the switch, so that the conductor could have been present at the station when the passengers were getting on and off, to prevent injury to some of them by others recklessly raising or lowering the rail, or crowding feeble passengers against the car, or causing injury in any other manner which would be likely in such a crowd when there is no supervision by an officer of the company.